MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2016 ME 165
Docket:       Ken-15-541
Argued:       September 13, 2016
Decided:      November 8, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.


BCN TELECOM, INC.

v.

STATE TAX ASSESSOR


SAUFLEY, C.J.

[¶1]  The State Tax Assessor appeals from a summary judgment entered by the Superior Court (Kennebec County, *Murphy, J.*) in favor of BCN Telecom, Inc., on BCN's appeal from the assessment of a state service provider tax, 36 M.R.S. § 2552(1)(E) (2011),[1] on certain flat charges that BCN imposed on some business customers' lines from March 2008 to October 2011.  The charges were designed in part to reimburse BCN for presubscribed interexchange carrier charges (PICCs)[2] that it paid to access local telephone infrastructure, and in part to generate profits.  We agree with the Assessor

---

[1] Although the parties agree that the procedure in this matter was governed by the provisions of Title 36 that are currently in effect, *see* 36 M.R.S. §§ 151, 151-D (2015), the substantive statutes that we have been asked to construe are those that were in effect during the audit period.

[2] For the reader's ease in this matter, which involves multiple abbreviations, "PICC" is pronounced "pixie" in the telecommunications industry.

2

that (A) the amounts received by BCN were subject to the tax as part of the sale price for telecommunications services, and (B) BCN failed to provide prima facie proof that the tax exemption for interstate telecommunications services, 36 M.R.S. § 2557(34) (2011), applied to these charges. Accordingly, we vacate the judgment entered by the Superior Court.

## I. STANDARD OF REVIEW

[¶2] This matter was decided by the Superior Court on cross-motions for summary judgment. The court considered the matter de novo, *see* 36 M.R.S. § 151-D(10)(I) (2015),[3] and we review the decision of the court on appeal. In considering an appeal from a summary judgment, we review de novo whether there was no genuine issue of material fact and either party was entitled to judgment as a matter of law. *See* M.R. Civ. P. 56(c); *Blue Yonder, LLC v. State Tax Assessor*, 2011 ME 49, ¶ 7, 17 A.3d 667. In interpreting statutes, we give effect to the Legislature's intent as expressed in the statutes' plain meaning. *Scott Paper Co. v. State Tax Assessor*, 610 A.2d 275, 277 (Me. 1992). Because the Superior Court was authorized to rule on legal matters de novo, *see* 36 M.R.S. § 151-D(10)(I), we review the court's interpretation directly and

---

[3] "The court shall make its own determination as to all questions of fact or law, regardless of whether the questions of fact or law were raised before the division within the bureau making the original determination or before the board." 36 M.R.S. § 151-D(10)(I) (2015).

do not defer to the Tax Assessor's interpretive rulings.[4] *See Blue Yonder, LLC*, 2011 ME 49, ¶¶ 6-7, 17 A.3d 667.

## II. BACKGROUND

[¶3]  The following facts are drawn from the parties' statements of material facts and their stipulated facts and exhibits.  During the relevant audit period of March 1, 2008, to October 31, 2011, BCN functioned in Maine both as a competitive local exchange carrier (CLEC), supplying local telephone service, and an interexchange carrier (IXC), providing long-distance service between exchange areas.  BCN charged a monthly rate for local calls and a per-minute rate for interstate and intrastate long-distance calls.  BCN had no employees stationed in Maine but resold telecommunications services to business and residential customers in Maine for both local and long-distance services.

[¶4]  In its role as an IXC, BCN was, in some instances, charged PICCs, which are fees or end-user charges that a local exchange carrier may impose to recover a portion of the interstate local loop cost from an IXC.  *See* 47 C.F.R.

---

[4]  *Cf. SST & S, Inc. v. State Tax Assessor*, 675 A.2d 518, 521 (Me. 1996) (stating, before 36 M.R.S. § 151-D(10)(I) (2015) was enacted, that "absent language in the statute making the interpretative ruling of the Assessor contrary to the expressed legislative purpose," we would defer to the Assessor's interpretive ruling).

4

§ 69.153 (2014).[5]  Thus, IXCs like BCN pay PICCs to local exchange carriers, whether they are incumbent local exchange carriers (ILECs), which own the actual infrastructure of local loops, or CLECs, which compete with ILECs in providing local services.  *See id.*  PICCs are capped by federal regulations, but the amount charged by a local exchange carrier up to that cap is in the carrier's discretion.  *See* 47 C.F.R. 69.153(a), (e).

[¶5]  BCN's bills to its customers included a line item that it labeled, "PICC: Primary InterExchange Carrier Charge."  The charges that it thereby imposed on customers were not, themselves, PICCs, which are, by definition, paid *by IXCs* as long as customers, like those of BCN, have selected an IXC.  *See* 47 C.F.R. § 69.153(a), (b).  Thus, the charge listed on the customers' bills by BCN was more in the nature of a pass-through charge, although, as described below, the charge significantly exceeded the costs incurred by BCN.  BCN imposed its "PICC" charges on those business customers with multiple long-distance lines that did not negotiate with BCN to avoid paying the charges.  BCN did so in part to recover PICCs that it had paid to local exchange carriers and in part to realize a profit.

---

[5]  A local exchange carrier may recover a PICC from the end user only if the customer is not presubscribed to an IXC.  *See* 47 C.F.R. § 69.153(b) (2014).

[¶6]   BCN limited the charges that it imposed to an amount not exceeding the maximum PICC authorized for a local exchange carrier to charge an IXC by federal regulation.  *See* 47 C.F.R. 69.153(a), (e).  BCN's "PICC" charges were imposed on a per-line, not a per-call, basis, and were charged whether or not any long-distance calls were made.  Even if all of a customer's long-distance calls were in-state calls, BCN imposed the charge.

[¶7]   Nationwide, BCN, in its capacity as an IXC, paid a total of $386,802.46 in PICCs to local exchange carriers during the period established for the audit.  It then charged its customers $6,736,257.78, nationwide, in fees that it designated "PICC" in its bills.  In Maine alone, BCN charged $825,940.30 to customers under this "PICC" designation, more than double the amount of the costs it incurred on a *nationwide* basis.

[¶8]   Maine Revenue Services determined that BCN's "PICC" revenues were subject to a service provider tax as part of BCN's sale price for in-state "[t]elecommunications   services."    36 M.R.S.   §§   2551(15), 2552(1)(E), 2557(34) (2011).  BCN was assessed $41,296.96 in taxes and $7,778.60 in interest.  BCN sought reconsideration, *see* 36 M.R.S. § 151(2) (2015), and the Sales and Use Tax Division of Maine Revenue Services affirmed the assessment.  BCN sought review of the reconsidered decision by filing a

6

written statement of appeal with the Maine Board of Tax Appeals in October 2012. *See* 36 M.R.S. § 151(2)(E), (F)(1) (2015). The Board affirmed the imposition of the tax. *See* 36 M.R.S. § 151-D(10)(I).

[¶9] BCN filed a timely petition for review of final agency action in the Superior Court. *See id.*; M.R. Civ. P. 80C. The parties conducted discovery and, at the direction of the court, entered a joint stipulation of facts and exhibits. The parties filed cross-motions for summary judgment with statements of material facts and supporting materials. After considering the parties' submissions, the court granted BCN's motion for summary judgment, concluding that BCN's charges were not part of the "sale price" of telecommunications services, 36 M.R.S. §§ 2551(15), 2552(2) (2011), and that, even if they were, they were exempt from taxation because they were charges for *interstate* telecommunications services. The Assessor appeals to us. *See* 14 M.R.S. § 1851 (2015); M.R. App. P. 2.

III. DISCUSSION

A.    Applicability of Service Provider Tax

[¶10] "Statutes imposing taxes are construed most strongly against the government and in the citizen's favor and may not be extended by implication beyond the clear import of the language used." *Camp Walden v. Johnson*, 156

Me. 160, 165, 163 A.2d 356 (1960); *see also Capitol Bank & Tr. Co. v. City of Waterville*, 343 A.2d 213, 218 (Me. 1975) ("[T]ax statutes are to be construed strictly against the taxing authority."). During the audit period, the statute at issue here provided, "A tax at the rate of 5% is imposed on the value of . . . [t]elecommunications services" sold in Maine. 36 M.R.S. § 2552(1)(E).[6] "Value is measured by the sale price." 36 M.R.S. § 2552(2).

[¶11] As it applies here, "'[s]ale price' means the *total amount of consideration*, including cash, credit, property and services, for which . . . services are sold . . . without any deduction for the cost of materials used, labor or service cost, interest, losses and any other expense of the seller." 36 M.R.S. § 2551(15) (emphasis added). "Sale price" is specifically defined to include "any consideration for services that are a part of a sale." *Id.* Telecommunications services, at issue here, were defined as "the electronic transmission, conveyance or routing of voice, data, audio, video or any other information or signals to a point or between or among points." 36 M.R.S. § 2551(20-A) (2011).[7]

---

[6] The tax rate has since increased to six percent. *See* P.L. 2015, ch. 267, § TTTT-3 (effective January 1, 2016) (codified at 36 M.R.S. § 2552(1) (2015)).

[7] The statute differed slightly at the start of the audit period, defining "[t]elecommunications services" to include, in relevant part, "[t]he provision of 2-way interactive communications through the use of telecommunications equipment, exclusive of mobile telecommunications services." 36 M.R.S. § 2551(20)(A)(1) (2007).

8

[¶12]  We conclude, based on the plain language of the statute, that BCN's "PICC" charges to its Maine customers were included in the "total amount of consideration," 36 M.R.S. § 2551(15), that the multiple-line business customers paid to BCN for telecommunications services.  *See Camp Walden*, 156 Me. at 165, 163 A.2d 356.  Although BCN argues that the "PICC" charges were access charges—not consideration for actual telecommunications services—BCN did not require all multi-line business customers to pay these charges to access services, and the charges were part of the total compensation paid for telecommunication services.  *See* 36 M.R.S. § 2551(15).  BCN could have taken into account its need to cover costs and earn a profit through its ordinary rate-setting process, and there was nothing about the "PICC" charge that distinguished it as anything other than a charge for telecommunications services.[8]  Thus, whether or not federal regulators precluded or allowed BCN's billing practice, Maine's statutes brought the "PICC" charge imposed on Maine customers during the audit period within the sale price of telecommunications services.  *See id.*  Based on the language used

---

    [8] *Cf. Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 19 (Wash. 2007) (concluding that a carrier that "labeled the surcharge it imposed on local business service customers a PICC" had committed an unfair or deceptive act or practice because "the term PICC had the capacity to deceive a substantial portion of the public into thinking the surcharge was FCC regulated and required").

by the Legislature, the charges were subject to the service provider tax, *see* 36 M.R.S. § 2552(1)(E), unless an exemption applied.

B.     Exemption for Interstate Telecommunications Services

[¶13]  When a tax exemption is being interpreted, it must be "construed narrowly." *Brent Leasing Co. v. State Tax Assessor*, 2001 ME 90, ¶ 15, 773 A.2d 457.  "[A]n exemption from taxation, while entitled to reasonable interpretation in accordance with its purpose, is not to be extended by application to situations not clearly coming within the scope of the exemption provisions."  *Robbins v. State Tax Assessor*, 536 A.2d 1127, 1128 (Me. 1988) (quotation marks omitted).  To the extent that the applicability of the exemption cannot be determined on the facts provided on summary judgment, the matter must be resolved in favor of the Assessor because "[t]he burden of proof is on the taxpayer," 36 M.R.S. § 151-D(10)(I), which must make a prima facie showing of the applicability of the exemption for its claim to survive the cross-motions for summary judgment.  *Estate of Cabatit v. Canders*, 2014 ME 133, ¶ 8, 105 A.3d 439; *Kondaur Capital Corp. v. Hankins*, 2011 ME 82, ¶ 17, 25 A.3d 960.

[¶14]  The exemption at issue here applied to "[s]ales of interstate telecommunications service."  36 M.R.S. § 2557(34).  Although the PICC is a

creature of federal law that is chargeable to an IXC, *see* 47 C.F.R. § 69.153, BCN has offered no evidence to demonstrate that the charges that it imposed in fact related only to interstate telecommunications services. Given that the charges paid by multi-line business customers in Maine far exceeded what BCN paid in PICCs nationwide, however, we can be certain that not all of the revenues it received from Maine customers arose from PICCs related to interstate service. BCN has not, on the record supplied, met its burden to make a prima facie showing that all—or any identified portion—of the "PICC" charges that it imposed on Maine customers arose from the sale of interstate telecommunications services in Maine. Accordingly, the stipulated facts and summary judgment record, although undisputed, do not establish the applicability of the tax exemption as a matter of law. *See* 36 M.R.S. § 151-D(10)(I).

The entry is:

> Judgment vacated. Remanded for the entry of a
> judgment affirming the decision of the State Tax
> Assessor.

**On the briefs:**

Janet T. Mills, Attorney General, and Kimberly L. Patwardhan, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellant State Tax Assessor

Michael L. Sheehan, Esq., and Michael S. Smith, Esq., Preti Flaherty Beliveau & Pachios, LLP, Portland, and John W. Sullivan III, Esq., Sullivan & Associates, P.C., New York, New York, for appellee BCN Telecom, Inc.


**At oral argument:**

Kimberly L. Patwardhan, Asst. Atty. Gen., for appellant State Tax Assessor

John W. Sullivan III, Esq., for appellee BCN Telecom, Inc.


Kennebec County Superior Court docket number AP-2013-26
FOR CLERK REFERENCE ONLY