MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 119
Docket:      Ken-16-358
Argued:      May 12, 2017
Decided:     June 15, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE TAX ASSESSOR

v.

MCI COMMUNICATIONS SERVICES, INC.

GORMAN, J.

[¶1]   The State Tax Assessor appeals from the entry of a summary judgment in the Superior Court (Kennebec County, *Marden, J.*) in favor of MCI Communications Services, Inc. (MCI) on an appeal by the Assessor of a decision vacating the imposition of the state service provider tax on certain charges collected by MCI.  The court concluded that those charges were part of the sale of interstate or international telecommunications services and were therefore excluded or exempt from taxation.  We affirm the judgment.

I.  BACKGROUND

[¶2]   This appeal concerns two types of surcharges—property tax recovery charges (PTRCs) and carrier cost recovery charges (CCRCs)—that MCI, a telecommunications service provider of long distance telephone service

2

in Maine, imposed upon its Maine customers in 2008, 2009, and 2010. The case was presented to the Superior Court through joint stipulations of facts and stipulated exhibits. As stipulated, the following facts are not in dispute. MCI imposed PTRCs on its customers to recover a percentage of the local and state taxes that it paid on real and tangible personal property used to provide international, interstate, and intrastate telecommunications services. MCI imposed CCRCs on its customers to recover a percentage of the expenses that it paid to the Federal Communications Commission (FCC) and third party administrators for regulatory fees.[1] MCI determined the rate of the PTRC and CCRC surcharges by comparing the total expenses to be recovered to the total eligible revenue (i.e., revenue from interstate and international telecommunications services) against which the surcharges were to be recovered, with the intention of recovering only a portion of the total expenses paid. MCI collected these charges only from its customers with international and interstate services.

---

[1] These fees included interstate service provider regulatory fees, international bearer circuit fees, submarine cable fees, earth station fees, North American Numbering Plan fees, federal telecommunications relay service fees, and federal local number portability fees. CCRCs also allowed MCI to recover part of its own overhead expenses related to international and interstate settlement recoveries, and collecting and administering CCRCs and the federal universal service fund.

[¶3]  In January of 2011, Maine Revenue Services (MRS) notified MCI of its intent to audit MCI for the period of March 1, 2008, to December 31, 2010. As a result of the audit, MRS determined that PTRCs and CCRCs were subject to taxation.  MRS assessed MCI $184,873.69, including interest, for those charges collected during the audit period.

[¶4]  MCI sought reconsideration of the assessment, *see* 36 M.R.S. § 151 (2012),[2] which the MRS Audit Division denied.  MCI next sought review of the assessment with the Maine Board of Tax Appeals.  *See* 36 M.R.S. §§ 151(2)(E)-(G); 36 M.R.S. § 151-D (2012).[3]  By decision dated September 12, 2013, the Board vacated the imposition of the tax based on its determination that PTRCs and CCRCs were excluded or exempt from taxation because they were charged only in connection with sales of international and interstate services.

[¶5]  On November 6, 2013, the Assessor filed a timely petition for review and de novo determination in the Superior Court.  *See* 36 M.R.S.

---

[2]  This statute has since been amended but not in any way that affects this appeal.  P.L. 2013, ch. 45, § 4 (effective Apr. 22, 2013) (codified at 36 M.R.S. § 151 (2016)).

[3]  This statute has since been amended but not in any way that affects this appeal.  P.L. 2013, ch. 331, §§ B-1, B-2 (effective Oct. 9, 2013) (codified at 36 M.R.S. § 151-D (2016)).

4

§ 151-D(10)(I) (2016).[4]  As mentioned above, after they conducted discovery, the parties entered a joint stipulation of facts and exhibits and filed cross-motions for summary judgment.  In a judgment dated June 30, 2016, the court denied the Assessor's motion and granted MCI's motion for a summary judgment.  The Assessor timely appealed.

## II.  DISCUSSION

[¶6]  The Assessor contends that the PTRCs and CCRCs collected by MCI were subject to taxation because they were part of the taxable "sale price" of telecommunications services and were not excluded or exempt from taxation because they were not themselves "telecommunications services" nor were they international or interstate in nature.  Because the Assessor appeals from the court's decision on cross-motions for summary judgment, "we review de novo whether there was no genuine issue of material fact and either party was entitled to judgment as a matter of law."  *BCN Telecom, Inc. v. State Tax Assessor*, 2016 ME 165, ¶ 2, 151 A.3d 497; *see* M.R. Civ. P. 56(c).

---

[4]  Although the Superior Court designated this case as an appeal brought pursuant to M.R. Civ. P. 80C, the Superior Court considers de novo those petitions seeking review of a decision of the Assessor pursuant to 36 M.R.S. § 151(2)(F)(2), as well as those seeking review of a decision of the Maine Board of Tax Appeals pursuant to 36 M.R.S. § 151-D(10)(I).  We therefore review directly the decision of the Superior Court.  *See Linnehan Leasing v. State Tax Assessor*, 2006 ME 33, ¶ 16, 898 A.2d 408; *Apex Custom Lease Corp. v. State Tax Assessor*, 677 A.2d 530, 532 (Me. 1996).

[¶7]  In interpreting a tax statute, we look first to its plain meaning to give effect to the Legislature's intent.  *BCN Telecom*, 2016 ME 165, ¶ 2, 151 A.3d 497.  We "seek to avoid absurd, illogical or inconsistent results" and "will not read additional language into a statute" or treat words in a statute as "meaningless and superfluous."  *Blue Yonder, LLC v. State Tax Assessor*, 2011 ME 49, ¶ 10, 17 A.3d 667 (quotation marks omitted).  Further, we construe a tax statute "most strongly against the government and in the [taxpayer's] favor" and will not extend its reach "beyond the clear import of the language used."  *BCN Telecom*, 2016 ME 165, ¶ 10, 151 A.3d 497 (quotations marks omitted).  Statutory exemptions to taxes are construed narrowly, however, and we will not "extend[] [an exemption] . . . to situations not clearly coming within the scope of the exemption provisions."  *Id.* ¶ 13 (quotation marks omitted).

A.  The "Sale Price" of Telecommunications Services

[¶8]  We must first determine whether the charges at issue were part of the "sale price" of telecommunications services and were thus subject to the service provider tax before turning to whether the charges were excluded or exempt from that tax.  The tax applied to "the value of . . . [t]elecommunications services," and that value was "measured by the sale

6

price." 36 M.R.S. §§ 2552(1)(E), (2) (2016).[5] "Sale price" was defined, in relevant part, as "the total amount of consideration . . . for which . . . services are sold." 36 M.R.S. § 2551(15) (2016).[6] A charge falls within the "sale price" if it is "part of the total compensation paid for telecommunications services." *BCN Telecom*, 2016 ME 165, ¶ 12, 151 A.3d 497.

[¶9] Like the charges at issue in *BCN Telecom*, PTRCs and CCRCs are part of "the total amount of consideration . . . for which . . . services are sold." 36 M.R.S. § 2551(15); *see generally* 2016 ME 165, 151 A.3d 497. Nothing in the stipulated facts or exhibits—which describe these charges as "surcharge[s] . . . calculated as a percentage of charges for . . . telecommunications services" that "appear[ed] on a customer's bill if the customer purchase[d] interstate or international telecommunications service"—distinguishes PTRCs and CCRCs "as anything other than [charges] for telecommunications services." *BCN Telecom*, 2016 ME 165, ¶ 12, 151 A.3d 497. Based on the plain language of the statute and "the clear import" of that

---

[5] Title 36 M.R.S. § 2552 has been amended multiple times since the beginning of the audit period, but none of these amendments affects the statutory language at issue in this appeal. *See, e.g.*, P.L. 2015, ch. 300, § A-32 (effective Oct. 15, 2015) (codified at 36 M.R.S. § 2552 (2016)).

[6] Although this statute was amended partway through the audit period, *see infra* Part B, the amendment did not affect the relevant portions of this definition for purposes of this appeal. This statute has also been amended multiple times since the audit period, but none of these amendments affects this appeal. *See, e.g.*, P.L. 2015, ch. 300, §§ A-30, A-31 (effective Oct. 15, 2015).

language, *id.* ¶ 10, the PTRCs and CCRCs collected by MCI were therefore part of the "sale price" of telecommunications services and were subject to taxation unless they were otherwise excluded or exempted by the statute.

B.    The Nature of PTRCs and CCRCs

[¶10]   The Legislature amended the tax statute at issue in the instant case partway through the audit period.  P.L. 2007, ch. 627, §§ 62-64, 74-75 (effective July 18, 2008) (codified at 36 M.R.S. §§ 2551, 2557 (2016)).  Before July 18, 2008, the statute excluded the "sale price" of international and interstate telecommunications services from taxation, *see infra* Part C, and, from that date forward, the statute exempted the "sales of" international and interstate telecommunications services from taxation, *see infra* Part D. Regardless of which version of the statute was in force, whether the PTRCs and CCRCs were subject to taxation depends upon whether they related only to the sale of international and interstate services or whether they were also charged in connection with intrastate services.

[¶11]   There is no dispute that MCI imposed PTRCs and CCRCs only on customers who received international and interstate services and calculated them as a percentage of the international and interstate charges incurred by

8

those customers.[7] Despite those uncontroverted facts, however, the Assessor presents two arguments to support its position on appeal. First, the Assessor asserts that, because the surcharges themselves were not "services" and were not "interstate or international in nature," they are neither excluded nor exempt from the service provider tax. Second, the Assessor asserts that, because PTRCs and CCRCs were intended to recover costs that were not exclusively incurred in Maine, they did not arise solely from the sale of interstate or international telecommunications services in Maine, and therefore they are not excluded or exempt. We do not find either argument persuasive.

C.      Exclusion of International and Interstate Services

[¶12]  Before July 18, 2008, the statute excluded "service originating or terminating outside of this State" from the definition of "[t]elecommunications services," thereby excluding the "sale price" of international and interstate services from taxation. 36 M.R.S. §§ 2551(15), (20)(B)(1) (2007); 36 M.R.S. §§ 2552(1)(E), (2) (2007). Construing the statute strongly in favor of MCI and against the State, *see BCN Telecom*, 2016 ME 165, ¶ 10, 151 A.3d 497, we

---

[7] As the Assessor has conceded, MCI imposed the charges at issue only on the international and interstate portion of the customer's plan even where a customer purchased bundled intrastate, interstate, and international services.

conclude that the PTRCs and CCRCs collected by MCI before July 18, 2008, were not subject to taxation.  The plain language of the statute applied the tax to the "sale price" of "[t]he provision of 2-way interactive communications . . . originating and terminating" within Maine.   36 M.R.S.  §§ 2551(15),  (20); 36 M.R.S. §§ 2552(1)(E), (2).  Because PTRCs and CCRCs were *only* included in the "sale price" of telecommunications services originating or terminating outside of Maine during the audit period, *see supra* Part B, they were excluded from taxation.

D.    Exemption of International and Interstate Services

[¶13]   From July 18, 2008, to the end of the audit period, the statute defined "[t]elecommunications services" more generally as "the electronic transmission, conveyance or routing of . . . information or signals to a point or between or among points."   36 M.R.S. § 2551(20-A) (2016).   It expressly exempted, however, "[s]ales of international telecommunications service" and "[s]ales of interstate telecommunications service" from taxation.[8]   36 M.R.S.

---

[8] The statute defined an "[i]nternational telecommunications service" as one "that originates or terminates in the United States and terminates or originates outside the United States" and an "[i]nterstate telecommunications service" as one "that originates in one state, territory or possession of the United States and terminates in a different state, territory or possession of the United States."  36 M.R.S. §§ 2551(5-A), (5-B) (2016).

§§ 2557(33), (34) (2015).[9]  The phrase "sales of" is undefined in the statute, and we must determine whether the exemptions for "sales of" international and interstate services includes the statutorily-defined "sale price," which would result in exempting PTRCS and CCRCs from taxation, or whether the exemptions are more limited than the "sale price," which would mean that PTRCs and CCRCs remain within the ambit of the tax statute.

[¶14]  "In construing a statutory term that is undefined in the statute itself, our primary obligation is to determine its plain meaning.  We often rely on the definitions provided in dictionaries in making this determination." *Apex Custom Lease Corp. v. State Tax Assessor*, 677 A.2d 530, 533 (Me. 1996) (citation omitted).  The noun "sale" is commonly defined to mean "[t]he transfer of property or title for a price."[10]  Black's Law Dictionary 1337 (7th ed. 1999).  Similarly, the Legislature has defined "sale" elsewhere to mean "any transfer, exchange or barter, in any manner or by any means whatsoever, for a consideration," 36 M.R.S. § 1752(13) (2016), and "the

---

[9]  The Legislature recently amended these sections, limiting the exemption of sales of international and interstate telecommunications services to those services sold "to a business for use directly in that business."  P.L. 2015, ch. 267, §§ TTTT-4, TTTT-5, TTTT-9 (effective Jan. 1, 2016) (codified at 36 M.R.S. §§ 2557(33), (34) (2016)).  These changes do not affect this appeal.

[10]  "Price" is commonly defined as "[t]he amount of money or other consideration asked for or given in exchange for something else; the cost at which something is bought or sold."  Black's Law Dictionary 1207 (7th ed. 1999).

passing of title from the seller to the buyer for a price," 11 M.R.S. § 2-106(1) (2016). Considering these definitions together, a "sale" is fundamentally an exchange of goods or services for a price or consideration and is therefore broader than and inclusive of the price. *See Darling's v. Ford Motor Co.*, 1998 ME 232, ¶ 14, 719 A.2d 111 ("In the absence of evidence to the contrary, we conclude that the Legislature intended the generally accepted meanings of the terms to apply.").

[¶15] Based on the plain language of the statute, anything that is part of the "sale price" of international or interstate services is also part of the "sales of" those services, which the Legislature exempted from taxation.[11] PTRCs and CCRCs, as part of the consideration paid for international and interstate telecommunications services, were also part of the "sales of" those services and "clearly [came] within the scope of the exemption provisions."[12] *BCN Telecom*, 2016 ME 165, ¶ 13, 151 A.3d 497 (quotation marks omitted).

---

[11] Assigning the undefined term "sale" its common, broad meaning is also consistent with the Legislature's definition of "sale price" as "the total amount of consideration . . . for which . . . services *are sold* [and] any consideration for services that are a *part of a sale*." 36 M.R.S. § 2551(15) (2016) (emphasis added). That definition narrows what might otherwise be considered the "sale price" by deducting certain listed amounts from the total consideration paid, further suggesting that the "sale[] of" services is broader than the "sale price" of those services. *See* 36 M.R.S. § 2551(15).

[12] Although, as the Assessor points out, PTRCs and CCRCs do not meet the definition of international or interstate telecommunications services because they are not literally signals that originate or terminate outside of this State, the statutory exemptions apply to the "sales of" those services, which includes the "sale price." To read the exemptions as applying only to "telecommunications services" while ignoring the phrase "sales of" would violate our rules of

12

[¶16]  Accordingly, we conclude that the PTRCs and CCRCs collected by MCI before July 18, 2008, were excluded from taxation and that those charges collected by MCI from July 18, 2008, forward were exempt from taxation.  MCI was entitled to judgment as a matter of law.  *See* M.R. Civ. P. 56(c); *BCN Telecom, Inc.*, 2016 ME 165, ¶ 2, 151 A.3d 497.

The entry is:

Judgment affirmed.

Janet T. Mills, Attorney General, and Kimberly L. Patwardhan, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellant State Tax Assessor

Jonathan M. Dunitz, Esq., Verrill Dana LLP, Portland, and Cindy B. Gonzales, Esq. (orally), Verizon Corp. Resources Group, LLC, Irving, Texas, for appellee MCI Communications Services, Inc.

Kennebec County Superior Court docket number AP-2013-42
FOR CLERK REFERENCE ONLY

---

statutory construction.  *See Blue Yonder, LLC v. State Tax Assessor*, 2011 ME 49, ¶ 10, 17 A.3d 667 (explaining that we must not treat words in a statute as meaningless or superfluous).