STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & CONSUMER DOCKET
DOCKET NO. BCD-AP-17-04

SOMERSET TELEPHONE CO.,           )
TELEPHONE AND DATA SYSTEMS,        )
INC. & AFFILIATES,                 )
                                   )
                Petitioners,       )   **ORDER DENYING PETIONERS' MOTION FOR**
  v.                               )   **SUMMARY JUDGMENT**
                                   )
STATE TAX ASSESSOR,                )
                                   )
                Respondent.        )

Petitioners Somerset Telephone Co., Telephone & Data Systems, Inc. (TDS), and its unitary affiliates move for summary judgment according to M.R. Civ. P. 56(c), in their appeal of the State Tax Assessor's decision to deny the carry-forward of certain losses to their 2013 tax return. TDS is a publicly traded corporation with a principal place of business in Chicago, Illinois, and is the parent company of Somerset, a small landline rural telecommunications company located in North Anson, Maine. TDS, Somerset, and United States Cellular Corporation were all members of an affiliated group of about 180 corporations ("the TDS Group") that was engaged in a unitary business, defined as a "business activity which is characterized by unity of ownership, functional integration, centralization of management and economies of scale." 36 M.R.S. § 5102(10-A). All member corporations of the TDS Group were engaged in the TDS unitary business, which engaged in activities both inside and outside of the State of Maine.

1

On or about October 11, 2013, Petitioners filed their 2012 Maine Corporate Income Tax Return, Form 1120ME. On line one of the return, Petitioners reported Federal Taxable Income ("FTI") of $18,037,032. This FTI included all income of the TDS Group Members, including their non-unitary income. According to the Maine corporate income tax framework, corporations operating in multiple states may subtract non-unitary income from their FTI by way of a subtraction modification, codified in 36 M.R.S. § 5200-A(2)(F). Petitioners subtracted their 2012 non-unitary income, amounting to $149,715,060 from their FTI, and the resulting Maine Adjusted FTI reported on the Petitioners' 2012 return was negative (-$162, 213,857). Accordingly, Petitioners reported zero Maine corporate income tax liability.

In March of 2014, Petitioners requested an advisory ruling from the State Tax Assessor regarding its Maine corporate income tax liability for 2012 and 2013. Petitioners asked the Assessor whether it could subtract the excess non-unitary income subtracted from their FTI according to section 5200-A, a total of $131,678,028 (the Disputed Amount), as a net operating loss in 2013, or in the alternative, carry forward the Disputed Amount from 2012 to 2013 to re-calculate the FTI of its unitary group. The Assessor concluded there were no provisions of Maine law allowing either of Petitioners requests.

Petitioners then timely filed their 2013 Maine corporate income tax return in accordance with the Assessor's advisory ruling. Petitioners then later filed an amended 2013 tax return seeking the carry-forward of the Disputed Amount previously requested, and in turn a refund of $536,027, plus interest. The Assessor denied the refund request and Petitioners filed the present case. This Court is presented with Petitioners' motion for summary judgment, asking the Court to hold that the plain language of Maine's corporate income tax framework allows for the carry forward of the Disputed Amount from 2012 to 2013. In the alternative, Petitioners ask the court

to find that the Assessor's interpretation of Maine's corporate income tax statute in violation of the due process and commerce clauses of the United States Constitution. After consideration of the arguments of the parties, along with the record before the Court, the Petitioners' motion for summary judgment is DENIED.

## STANDARD OF REVIEW

This is a de novo appeal of the State Tax Assessor's denial of the TDS Group's request for a refund of Maine corporate income tax. When a party seeks review of a decision issued by the Assessor upon reconsideration, the Court must make a de novo determination of the merits of the case and make its own determination as to all questions of fact or law. *Blue Yonder, LLC v. State Tax Assessor*, 2011 ME 49, ¶ 6, 17 A.3d 667 (citing 36 M.R.S. § 151). The Court does not accord heightened deference to the Assessor's decision in interpreting tax statutes. *Id*.

A party is entitled to summary judgment pursuant to M.R. Civ. P. 56 (c) when the summary judgment record reflects there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A fact is material if it has the potential to affect the outcome of the suit, and a genuine issue of material fact exists when a fact-finder must choose between competing versions of the truth, even if one party's version appears more credible or persuasive.

When examining tax statutes, Maine courts look to the plain meaning of the language to give effect to the legislative intent. *Foster v. State Tax Assessor,* 1998 ME 205, ¶ 7, 716 A.2d 1012. Tax statutes must be construed strictly against the taxing authority. *BCN Telecom, Inc. v. State Tax Assessor*, 2016 ME 165, ¶ 10, 151 A.3d 497.

**DISCUSSION**

In taxing the income of a nonresident corporation operating within its borders, Maine is limited to taxing that portion of the corporation's income attributable to business activity within the State of Maine. *Container Corp. of America v. Franchise Tax Bd.,* 463 U.S. 159, 164 (1983). Taxing income not attributable to business activity within the State violates the due process and commerce clauses of the United States Constitution. U.S. Const. amend. XIV; art. 1, § 8, cl. 3. Nevertheless, a state is not without any power to tax the income of a business engaged in interstate and foreign commerce. Maine may tax income of such a business if that income is attributable to Maine. *See Mobile Oil Corp. v. Commissioner of Taxes*, 445 U.S. 425, 436-37 (1980). The "unitary business principle" is used to determine which portion of a multistate corporation's income is attributable to Maine.

According to the unitary business principle, Maine can tax an apportioned share of the income generated by a non-domiciliary corporation's activities within and outside of the State if those activities form part of a unitary business, or are investments serving operational roles in the unitary business. Maine statute defines a "unitary business" as "a business activity which is characterized by unity of ownership, functional integration, centralization of management and economies of scale," 36 M.R.S. § 5102(10-A). Meanwhile, an investment is unitary if it serves an operational, rather than investment, function in the unitary business. *Allied-Signal, Inc. v. Director, Div. of Taxation,* 504 U.S. 768, 787 (1992).  The parties agree that Petitioners are engaged in a unitary business in Maine. The parties' disagreement involves the relationship of Maine's corporate income tax framework to income that was derived from the Petitioner's unitary group, though not from Petitioner's unitary business or investments.

**I. Maine's Corporate Income Tax Framework Does Not Permit Petitioners to Carry Forward the Disputed Negative Income to Future Years**

Maine's corporate income tax is guided by the federal Internal Revenue Code (the Code), which imposes tax on "the taxable income of every corporation." 26 U.S.C. § 11(a) (2018). The Code defines "taxable income" as the corporation's "gross income minus the deductions allowed by this chapter." 26 U.S.C. § 63(a) (2018). One of the deductions the Code permits is the deduction for "net operating loss." 26 U.S.C. § 172 (2018). A net operating loss (NOL) is a federal income tax concept, and is defined as "the excess of the deductions allowed by this chapter over the gross income." *Id.* § 172(c). Once a unitary group subtracts deductions, including the NOL, from its gross income, it has arrived at what Maine describes as Federal Taxable Income (FTI).

For the purpose of Maine's corporate income tax, the taxpayer- unitary group's FTI serves as a basis. The FTI is modified by subtracting, or adding back specified income to arrive at the Maine corporate income tax base, or "Maine net income." 36 M.R.S. §§ 5200-A, 5102(8). These modifications codify the Maine Legislature's policy decisions, while enforcing constitutional limits on the income Maine is allowed to tax. Crucially, section 5200-A provides a subtraction modification to exclude non-unitary income from Maine Net Income. Finally, the amount of income attributed to Maine is determined using an apportionment formula. 36 M.R.S. §§ 5211, 5200(4). Thus, Maine's corporate income tax is based on the unitary group's federal taxable income, adjusted by addition and subtraction modifications and then apportioned to Maine. This calculation is similar whether the business operates as a single corporation or as a member of a "group of corporations that derive income from a unitary business carried on by 2 or more members of an affiliated group", otherwise known as a unitary group. The taxpayer reports, on an aggregate basis, the federal taxable income, Maine net income, and apportionment data of its unitary business on a combined report. 36 M.R.S. §§ 5220(5), 5244.

When apportioning federal taxable income, the State of Maine treats activities inside and outside of Maine as one single integrated business enterprise, operating as a unit in the ultimate production of income. The State is constitutionally permitted to include the income from out-of-state activities in determining the income apportionable to and taxable by Maine. The income of a unitary group, engaged in a unitary business, is apportioned to Maine by multiplying the group's net income by a sales factor. 36 M.R.S.A. §§ 5200(1), (4)-(5); 5211(1), (8), (14) (2010).

At the time of filing their 2012 Maine Corporate Income Tax Return, Petitioners claimed $18,037,032 in FTI. This included all income of the TDS unitary group, including both unitary and non-unitary income. In accordance with section 5200-A, Petitioners then subtracted $149,715,060 in non-unitary income (as well as subtracting income pursuant to other modifications) leaving -$162,213,857 in Maine adjusted FTI. Petitioners then reported $0 in corporate income tax liability to the State of Maine.

Petitioners seek to carry forward the excess non-unitary income subtracted from their FTI according to section 5200-A, a total of $131,678,028 (the Disputed Amount), as a net operating loss in 2013. As the Maine Tax Assessor previously determined, Maine law does not provide for such a carryforward. The Maine Legislature has not provided for Maine to have its own NOL deduction, and instead chose to provide a mechanism to modify a taxpayer's Federal Taxable Income with the addition and subtraction modifications found in section 5200-A. Because Petitioners were left with negative income in 2012 only after subtracting income pursuant to section 5200-A, their excess negative income under current Maine law does not qualify as a NOL subject to carry-forward; this calculated loss would need to have occurred when determining the FTI of the unitary group. Stated another way, for the purpose of Maine's corporate income tax, once the FTI of the unitary group is determined according to Federal law,

6

including deductions such as the NOL, Maine statutes take over. At this point in the calculation, Petitioners' FTI was $18,037,032. It was then that Petitioners subtracted non-unitary income from their FTI in accordance with section 5200-A and arrived at a negative Maine taxable income. Despite Petitioners' reported negative Maine taxable income in 2012, Maine laws simply do not provide a carryforward for such income.

Petitioners rely upon *Fairchild Semiconductor v. State Tax Assessor* for the proposition that when the calculation of Maine net income under section 5102(8) results in a loss, the Federal NOL carryforward deduction is available to offset Maine net income in later years. 1999 ME 170, 740 A.2d 584. The situation in *Fairchild,* however, differs from that of the Petitioners. Fairchild, a Delaware corporation, was a member of a consolidated group at the time of filing their federal tax return. This consolidated group consisted of roughly 14 other corporations. When filing their federal corporate income tax return, many corporations in the consolidated group were not members of the unitary group for the purpose of Maine's corporate income tax. *Id.* ¶ 3. Therefore, income derived from neither the unitrary group or the unitary business remained part of the group's FTI and thus offset a potential NOL when applied to Maine. The Law Court found, reflected in the language of section 5102(8), "an intent to determine the Maine 'net income' of a unitary group separately pursuant to section 63 of the Internal Revenue Code, as opposed to simply adopting the treatment of the unitary group's income at the federal level, which may be the result of the group's membership in a federal consolidated group." *Id.* ¶ 9. In Fairchild's case, the calculation of the unitary group's FTI separately resulted in an a NOL that, under the Code could be carried back. The Court has concluded that Petitioners' interpretation of *Fairchild* is overbroad; rather than speaking to *what*

7

*income* should be considered in determining a unitary group's FTI, *Fairchild* speaks to *which corporations* should be considered in determining the FTI of the unitary group.

Additionally, Petitioners assert that, based on 36 M.R.S. § 5102(8), the definition of Maine Net Income explicitly excludes non-unitary income. For the years at issue, section 5102(8) defined Maine Net Income as:

> for any taxable year for any corporate taxpayer, the taxable income of that taxpayer for that taxable year under the laws of the United States as modified by Section 5200-A and apportionable to this state under Chapter 821. To the extent that it derives from a unitary business carried on by 2 or more members of an affiliated group, the Maine net income of a corporation is determined by apportioning that part of the federal taxable income of the entire group that derives from the unitary business.

36 M.R.S. § 5102(8). Petitioners point to the language above stating that Maine net income is determined "by apportioning *that part* of the federal taxable income of the entire group that derives from the unitary business", to argue that by definition, non-unitary income, even when derived from the unitary group, must not be considered part of FTI in Maine. However, according to section 5200(4) Maine begins with the FTI of the *entire unitary group*, including both unitary or non-unitary income, eventually utilizing the subtraction modification found in section 5200-A(2)(F) to subtract non-unitary income from the Maine tax base. Petitioners' reading of section 5102(8) would render the language of section 5200(4) meaningless. For this reason, the Court does not find Petitioners' argument persuasive.

Likewise, Petitioners assert they should be allowed to carry forward the Disputed Amount and subtract it in 2013 based on the plain language of Section 5200-A(2)(F). Taxpayers are generally permitted to subtract "income [Maine] is prohibited from taxing under the Constitution of Maine or the United States Constitution to the extent that it is included in the taxpayer's federal taxable income." 36 M.R.S. § 5200-A(2)(F). Nevertheless, Maine's Corporate Income Tax system imposes a tax on the net income of corporations for each taxable year. 36

8

M.R.S. § 5200(1), (4). Net income is specifically defined as "for any taxable year, the taxable income of the taxpayer for that taxable year under the laws of the United States as modified by section 5200-A." 36 M.R.S. § 5200(5). Accordingly, all modifications found in section 5200-A apply to FTI for that individual, taxable year. 36 M.R.S. § 5200-A(1), (2). It does not follow that a modification granted in one taxable year automatically extends to following years when the subtraction yields excess negative income. Instead, section 5200-A(2)(F) permits a taxpayer to subtract income the State is prohibited from taxing according to the United States Constitution, "*to the extent it is included in the taxpayer's federal taxable income*." The plain language of the statute restricts the subtraction modification to when the relevant income was present in the taxpayer's FTI.

Furthermore, in contrast with other portions of section 5200-A, section 5200-A(2)(F) does not explicitly permit the carry forward of excess negative income. Meanwhile, section 5200-A(2)(J) does explicitly provide for a carryforward of net income less than zero in the context of income tax refunds. Had the legislature intended to permit a carryforward of the subtraction modification in section 5200-A(2)(F), it knew how to do so, but did not include this provision in our statute.

In summary, Petitioners are not entitled to a NOL for the 2012 tax year. Thus, they are not entitled to carry that NOL forward. Maine does not exclude non-unitary income from its FTI determination. Likewise, despite the loss resulting from section 5200-A(2)(F)'s subtraction modification, section 5200-A applies only to one taxable year, and Maine's corporate income tax framework does not provide for a carryforward of that loss.

## II. Neither Maine Law nor the Assessor's Interpretation Directly or Indirectly Taxes Non-Unitary Income

Maine may tax a proportionate share of income of a non-domiciliary corporation that carries out a particular business both inside and outside of its borders. Conversely, Maine may not tax non-unitary income, or received by a corporation from an unrelated business activity which constitutes a discrete business enterprise.

Petitioners assert that Maine, in accordance with the Tax Assessor's interpretation of the Maine corporate income tax framework, is indirectly taxing non-unitary income in violation of the United States Constitution. The Court reviews issues of constitutional interpretation de novo. *Goggin v. State Tax Assessor,* 2018 ME 111, ¶ 20, 191 A.3d 341 (citing *Bouchard v. Dep't of Pub. Safety*, 2015 ME 50, ¶ 8, 115 A.3d 92.) "A person challenging the constitutionality of a statute bears a heavy burden of proving unconstitutionality[,] since all acts of the Legislature are presumed constitutional." *Id.* To overcome the presumption of constitutionality, the challenging party must convincingly demonstrate that the Constitution and the statute conflict. All reasonable inferences must be made in favor of the constitutionality of the statute. *Id*.

When taxing a multi-state corporation, Maine begins with the corporation's FTI, including the deductions allowed according to federal law. At this stage in the calculation, the FTI still includes both unitary and non-unitary income, thus allowing all deductions attributable to both sets of income. To ensure Maine does not tax the corporation's non-unitary business, section 5200-A(2)(F) subtracts non-unitary income (and expenses incurred in production of that income) from the corporation's FTI. The Maine net income is then apportioned to the state. Because all non-unitary income is subtracted from Maine's tax base each year, non-unitary income is never included in said tax base, or apportioned to the state.

Petitioners do not argue that non-unitary income was taxed directly by the State of Maine. Rather, they argue that without the ability to carry forward losses incurred in 2012 to the 2013 tax year, Maine has, in effect, changed the nature of the income taxed in such a way as to indirectly tax non-unitary income. In support of their argument, Petitioners rely on the United States Supreme Court decision in *Hunt Wesson, Inc. v. Franchise Tax Board of California,* 528 U.S. 458 (2000).

In *Hunt-Wesson,* the State of California allowed corporate taxpayers to deduct certain costs from their gross income for the purpose of determining the amount to tax. *Id.* at 461. One such deduction was for interest expense. At the time, California limited the amount of interest expense deductible to that which exceeded the interest and dividend income of the corporation from its non-unitary business. *Id.* In this case, California was directly tying the available deduction to non-unitary income, an amount it was not constitutionally allowed to tax. The Supreme Court determined this approach amounted to an indirect tax of non-unitary income in violation of the Due Process and Commerce Clauses of the Constitution. *Id*. at 468.

Unlike California in *Hunt-Wesson*, Maine is not limiting deductions by tying them to non-unitary income. Rather, Maine allows all deductions occurring at the federal level, and completely subtracts non-unitary income for the purposes of the State's corporate income tax. Thus, Maine is not using its corporate income tax law to "indirectly" tax non-unitary income which it is barred from taxing. For every taxable year, non-unitary income is subtracted, in its entirety, from the Maine tax base in accordance with 36 M.R.S. § 5200-A(2)(F).

**III.    Neither Maine Law nor the Assessor's Interpretation Violate the Commerce Clause or Due Process Clause of the United States Constitution**

Petitioners also argue that the Maine Tax Assessor's interpretation of the Maine Corporate Income Tax violates both the commerce and due process clauses of the United States Constitution. The Supreme Court of the United States has established a four-part test for determining if a tax violates the commerce clause. For the tax to be constitutional, it (1) can only be applied to an activity with a substantial nexus with the taxing state; (2) must be fairly apportioned; (3) cannot discriminate against interstate commerce; and (4) must be fairly related to the services provided by the state. *Goggin,* 2018 ME 11, 191 A. 3d 341 (citing *John T. Cyr & Sons, Inc. v. State Tax Assessor*, 2009 ME 52, ¶ 23, 970 A.2d 299; *Complete Auto Transit*, 430 U.S. at 279, 97 S.Ct. 1076. Petitioners assert the Tax Assessor's interpretation violates the third prong of the Supreme Court's test.

To determine whether a state's taxing scheme unconstitutionally discriminates against interstate commerce, the U.S. Supreme Court applies an "internal consistency" test. This test assumes that every State has the same tax structure, and "allows courts to distinguish between (1) tax schemes that inherently discriminate against interstate commerce without regard to the tax policies of other States, and (2) tax schemes that create disparate incentives to engage in interstate commerce. . . only as a result of the interaction of two different but nondiscriminatory and internally consistent schemes." *Comptroller of Treasury of Maryland v. Wynne,* 135 S. Ct. 1737, 1802 (2015). Taxes falling under the first category are typically unconstitutional, while those under the second are not. *Id.*

To apply the internal consistency test to Maine's corporate income tax structure, the Court must assume every state has adopted Maine's law. Therefore, to be clear, every state would begin their corporate income tax calculation with the unitary group's FTI (including

12

deductions allowed under federal law). They would then subtract non-unitary income from the FTI for the given tax year (along with the other addition and subtraction modifications allowed by section 5200-A), and would apportion the income according to Maine's apportionment formula. See 36 M.R.S. § 5211(8), (14).

For Petitioner's argument to persuade the Court that Maine's corporate income tax law is unconstitutional for failing the internal consistency test, they would need to demonstrate Maine's law "inherently discriminates against interstate commerce", rather than merely creating "disparate incentives" when engaging in interstate commerce. *Wynne,* 135 S. Ct. at 1802. Petitioners appear to argue that the in-state vs. out-of-state nature of business activities dictates which subtraction modifications are able to be carried forward. Despite their assertion, as previously found, corporate taxpayer may not carry forward a "loss" resulting from negative Maine taxable income in a given year. It does not matter whether the income is in-state or out-of-state in nature.

In the present case, assuming every state had adopted Maine law in 2012 and 2013, Petitioners would not pay income tax to any jurisdiction on the income from its unitary business in 2012, as its non-unitary income exceeded its FTI resulting in negative state taxable income. In 2013, Petitioners would follow the exact same steps as occurred in 2012, subtracting any non-unitary income for that year from its FTI. Finally, each state would apportion the income according to the same formula. In this reality, Petitioners would never be subject to multiple-taxation on their unitary income.

In asserting Maine's corporate income tax statute is unconstitutional, Petitioners point to scenarios where a unitary business is taxed more heavily for operating in multiple states. As they see it, this discrepancy exists when, as in the situation at hand, a business has negative net-

13

income for a taxable year caused by the businesses having more non-unitary income than FTI. In Maine, the subtraction of non-unitary income is effective up until the corporation's Maine net income reaches $0. Corporations do not gain future value from non-unitary income leaving them with a net negative income. Meanwhile, the state in which the non-unitary income is derived taxes this income in full. Thus, zooming in to a single taxable year, Maine subtracts this income from its tax base entirely, and the state from which it is derived taxes it in full. Only when analyzing the framework from a multi-year perspective can one notice the potential discrepancy. In future years, if Maine has a positive tax base, the value subtracted in prior years is gone, and the remainder fails to reduce the corporation's tax liability. Thus, despite being taxed in full in the state of origin, the tax burden is not always reduced by an equal amount *over a multi-year time period.* Nonetheless, for any given taxable year, non-unitary income is subtracted in full in Maine, and taxed in its state of origin. Such taxation is not inherently discriminatory. As all acts of the legislature are presumed constitutional, the Court concludes that Petitioners have not met the heavy burden required to prove otherwise.

## IV. Petitioners are not Entitled to Alternative Apportionment Pursuant to 36 M.R.S. § 5211(17)

Finally, Petitioners seek alternative apportionment based on their argument that Maine's regular apportionment formula is unconstitutional. In seeking an alternative apportionment, the burden of proof imposed on the taxpayer is that of clear and convincing evidence. *See Gannett Co. v. State Tax Assessor,* 2008 ME 171, ¶¶ 34-36, 959 A.2d 741; *Tambrands, Inc. v. State Tax Assessor,* 595 A.2d 1039, 1045 (Me. 1991). According to 36 M.R.S. § 5211(17):

if the apportionment provisions of [section 5211] do not fairly represent the extent of the

taxpayer's business activity in the state, the taxpayer may petition for, or the tax assessor

may require, in respect to all or any part of the taxpayer's business activity, if reasonable, the employment of any other method to effectuate an equitable apportionment of the taxpayer's income.

*Id.* Generally, Courts avoid alternative apportionment, and treat it as a rare exception. *St. Johnsbury Trucking Co. v. New Hampshire,* 385 A.2d 215, 217 (N.H. 1978).

Petitioners have not met the burden of proof required for the Court to grant alternative apportionment. The State's apportionment formula will only be varied when it does not fairly represent the taxpayer's business activity in this State. *Sears, Roebuck & Co. v. State Tax Assessor*, 561 A.2d 172, 173 (Me. 1989). In this case, Petitioner's business activities were similar both in Maine, and outside of Maine. Petitioner's operate traditional phone, cellular phone, and information technology services similarly across the country. The Court cannot on this record provide the remedy of alternative apportionment for the purpose of shrinking Petitioner's tax liability.

## CONCLUSION

For the reasons stated above, Petitioner's motion for summary judgment is DENIED. The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

**Dated:**   1/23/2020

_____/s_____
 **Michaela M. Murphy**
 **Justice, Business and Consumer Court**

**Somerset Telephone Co., et al.**

     **v.**

**State Tax Assessor**

| | |
|---|---|
| **Somerset Telephone Co., et al.** | Sarah Beard, Esq. |
| | 254 Commercial Street |
| | Portland, ME 04101 |
| | |
| **State Tax Assessor** | Kimberly Patwardhan, AAG. |
| | 6 State House Station |
| | Augusta, ME 04333 |