Hadley R. CHANDLER

v.

TOWN OF PITTSFIELD, et al.

TOWN OF PITTSFIELD

v.

Hadley R. CHANDLER.

Supreme Judicial Court of Maine.

Argued June 13, 1985.

Decided Aug. 13, 1985.

Nale & Nale Law Offices, John E. Nale (orally), Waterville, for Hadley R. Chandler.

Hiscock & Barclay, Frank G. Chapman (orally), Locke-Chapman Office, Augusta, for Town of Pittsfield.

Before NICHOLS, ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

ROBERTS, Justice.

These consolidated cases arise out of the same zoning controversy as *Town of Pittsfield v. Chandler*, 457 A.2d 1122 (Me.1983) (CV 82–171), in which we held that a Superior Court order vacating a decision of the Pittsfield Board of Appeals was not a final judgment appealable to the Law Court. In *Chandler v. Town of Pittsfield* (CV 84–112), the Superior Court, Somerset County, reversed the Board of Appeals, ruling that the Pittsfield Planning Board had improperly denied Chandler a special exception

permit. The Town appeals from that judgment. Chandler appeals from an adverse final judgment of the Superior Court in CV 82–171. We affirm the Superior Court decision in CV 84–112 and therefore do not reach the issues presented in CV 82–171.

I.

In April, 1982, Hadley R. Chandler sought to resume the use of his land in Pittsfield as a mobile home park. The property in question had been actively used as a mobile home park for many years, but the parties stipulated that it had not been operational since 1978. Pittsfield officials contended that the only way the use could be resumed was by application for approval of a special exception because the new zoning ordinance permitted mobile home parks in that particular district only as a special exception. Chandler contended, however, that the zoning ordinance's prior existing non-conforming use provisions entitled him as a matter of right to resume operation of the mobile home park. The Pittsfield Board of Appeals unanimously agreed with Chandler that the special exception permit was not needed because the mobile home park was a non-conforming use. The Town appealed that decision to the Superior Court (CV 82–171), which held that Chandler did not have a non-conforming use right. The Superior Court remanded the matter to the Board of Appeals for remand to the Planning Board to allow for consideration of whether Chandler could implement a mobile home park use pursuant to the special exception provisions of the ordinance. Chandler sought review of the Superior Court decision on this point, but we characterized the Superior Court holding as "interlocutory in nature" and dismissed the

appeal. *Town of Pittsfield*, 457 A.2d at 1122–23.

Chandler then applied for a special exception permit pursuant to the provisions of the Town's current zoning ordinance. The land involves property abutting Industrial Park Road on the east, Interstate 95 on the west, the Carriage Inn and a gas station on the north, and industrial park land on the south. The land is located in a Highway Oriented Commercial District as designated by the terms of the zoning ordinance. The area of the proposed mobile home park is located in a portion of the Highway Oriented Commercial District that has undergone substantial commercial and industrial development in recent years. After a series of meetings, the Planning Board denied the application, stating the reasons therefor in a letter dated March 7, 1984. The Board of Appeals subsequently voted to uphold the decision of the Planning Board. In CV 84–112 Chandler filed an appeal from that decision, urging that (1) the Planning Board had no authority to deny the special exception and (2) the Planning Board's reasons for denial were not supported by substantial or credible evidence in the record.

On December 3, 1984, the Superior Court, Somerset County, reversed the decision of the Pittsfield Board of Appeals. The Superior Court determined that all of the minimum development standards for mobile home parks set forth in Article 5, section 108.2(b) and Article 5, section 108.-3(a)–(j) of the Town Zoning Ordinance had been met. In turn, the Court held that with respect to the factors outlined in Article 6, section 108.3, pertaining to evaluation of special exception applications, the ordinance provided only that the Board could consider those factors in fashioning conditions on an already approved permit.[1] Al-

---

1. Article 6, sections 108.3(4) & (5) provide in pertinent part as follows:

 **4) Factors Applicable to Special Exception Uses**

 a. In considering a Special Exception Use Permit, the Planning Board shall evaluate the immediate and long-range effects of the proposed use upon:

 1. The maintenance of safe and healthful conditions.
 2. The prevention and control of water pollution and sedimentation.
 3. The control of building sites, placement of structures, and land uses.

though we disagree with the Superior Court's interpretation of Article 6, we agree that Article 6 constitutes an overly broad delegation of authority to the Planning Board.

## II.

Under the Pittsfield Zoning Ordinance, a mobile home park is permitted only in a Forestry and Agriculture District or a Highway Oriented Commercial District. Within those two districts, mobile home parks are classified as special exceptions. Article 5, section 108 of the ordinance contains minimum development standards for mobile homes and house trailers as well as mobile home parks, wherever located. Specifically, section 108.2(b) in Article 5 provides for a permit application meeting certain specifications for submission to the Planning Board and the Code Enforcement Officer. Furthermore, sections 108.3(a)–(j) of Article 5 create certain minimum standards regarding location, access, size, grading, boundaries, streets, size of units, parking, recreational areas and utilities for mobile home parks. Finally, Article 6, section 108.3 provides generally that any special exception use permit must be applied for and granted by the Planning Board which decides upon applications in accordance with the provisions of the ordinance. Chandler's permit application complied with the necessary Article 5, section 108.2(b) specifications and also met the section 108.-3(a)–(j) standards.

The Superior Court found that the ordinance permitted the Planning Board to deny Chandler's application based on the detailed standards for mobile home parks listed in Article 5, sections 108.3(a)–(j), but that a special exception use permit could not be *denied* on the basis of the subparagraph (4) factors in Article 6, section 108.3. Rather, the Superior Court interpreted the Article 6 factors cited by the Board as merely supporting the attachment of conditions to the Board's *approval* of a special exception use application, as provided by section 108.3(5) in Article 6.[2] A *denial* of Chandler's application, the court reasoned, must be based on other standards in the Ordinance such as the Article 5, section 108.3(a)–(j) requirements. This interpretation of the Ordinance, however, is erroneous.

■ The terms "special exception" and "conditional use" are used interchangeably.

4. The protection of spawning grounds, fish, aquatic life, bird, and other wildlife habitat.

5. The conservation of shore cover, visual as well as actual points of access to inland and coastal waters and natural beauty, as well as those matters related to shoreland variances as set forth in Article 6, Section 108.-2(3)(c)(1–9) if the use in question is wholly or partially to be within a shoreland area or will directly affect a shoreland area.

b. The Planning Board shall also consider the following factors:

1. The compatibility of the proposed use with adjacent land uses and the Comprehensive Plan.

2. The need of a particular location for the proposed use.

3. Access to the site from existing or proposed roads.

4. The location of the site with respect to flood plains and floodways of rivers or streams.

5. The amount and type of wastes to be generated by the proposed use and the adequacy of the proposed disposal systems.

6. The impact of the proposed use on the land and adjacent water bodies and the capability of the land and water to sustain such use without degradation.

7. Existing topographic and drainage features and vegetative cover on the site.

8. The erosion potential of the site based upon degree and direction of slope, soil type and vegetative cover.

9. The impact of the proposed use on transportation facilities.

10. The impact of the proposed use on local population and community facilities.

11. The impact of the proposed use on local water supplies.

. . . .

**5) Conditions Attached to Special Exception Uses**

a. Upon consideration of the factors listed above, the Planning Board may attach such conditions, in addition to those required elsewhere in this Ordinance, that it finds necessary to further the purposes of this Ordinance. . . .

**2.** *See supra* note 1.

Special exceptions are considered by the legislative body to be essentially desirable uses, but uses that by their nature create special problems which require the imposition of restrictions or conditions. The use of special exceptions may be articulated as follows:

> Each zone in a community's zoning plan may contain certain designated uses available as a matter of right with no approval necessary from the appropriate zoning authorities. This group of uses is permitted without question because by their nature they do not pose any problems for other sanctioned uses within the district. On the other end of the spectrum, there are particular land uses which are either expressly prohibited from the zone or impliedly forbidden because the ordinance prescribes the totality of permitted uses. Between these two categories are a group of uses neither absolutely permitted as of right nor prohibited by law. They are privileges, in a sense, which must be applied for and approved by some designated governmental body authorized to condition the grant of permission based on a number of relevant land use considerations. Such uses of property are permitted uses, generally compatible with the zoning district *but not at every location therein nor without certain standards or other requirements being met.* Different terms have been applied to describe this broad phenomenon, *viz.,* special permits, special exceptions and conditional uses, but the consensus of judicial opinion is that they all refer to the same concept and are therefore interchangeable.

6 P. Rohan, *Zoning and Land Use Controls* § 44.01[1] (1984) (emphasis added, footnotes omitted).

Article 6 purports to serve this purpose, while the Article 5 requirements for mobile home parks create minimum development standards for mobile home parks, wherever located. Once a proposed mobile home park meets the minimum qualifications of Article 5, the Article 6 criteria, through the special exception application process, are intended to give the Planning Board the flexibility to deny an application for a particular location if the particular site is inappropriate for the proposed development at that time. Importantly, however, legislatively defined standards in the Ordinance must be sufficiently specific to prevent the Planning Board from acting in an arbitrary manner.

### III.

The Planning Board denied Chandler's application for a special exception permit because (1) the proposed site was a high traffic area, making it unsafe for mobile home park residents; (2) the mobile home park would be incompatible with adjacent commercial and industrial uses; (3) other, more suitable, locations for the park existed in Pittsfield; and (4) the absence of sidewalks in the area would result in unsafe pedestrian access to the park. The Board of Appeals affirmed the Planning Board's decision. These conclusions may be correlated roughly with the following Article 6, section 108.3 provisions:

> 4) **Factors Applicable to Special Exception Uses**
>
> a. In considering a Special Exception Use Permit, the Planning Board shall evaluate the immediate and long-range effects of the proposed use upon:
>
> 1. The maintenance of safe and healthful conditions.
>
> . . . .
>
> b. The Planning Board shall also consider the following factors:
>
> 1. The compatibility of the proposed use with adjacent land uses and the Comprehensive Plan.
>
> 2. The need of a particular location for the proposed use.
>
> 3. Access to the site from existing or proposed roads.

In *Waterville Hotel Corp. v. Board of Zoning Appeals,* 241 A.2d 50, 52 (Me.1968), we stated:

The legislative body may specify conditions under which certain uses may exist and may delegate to the Board discretion in determining whether or not the conditions have been met. The legislative body cannot, however, delegate to the Board a discretion which is not limited by legislative standards. It cannot give the Board discretionary authority to approve or disapprove applications for permits as the Board thinks best serves the public interest without establishing standards to limit and guide the Board.

*See also Cope v. Inhabitants of the Town of Brunswick,* 464 A.2d 223, 226 (Me.1983). "[T]he legislative body must spell out its policies in sufficient detail to furnish a guide which will enable those to whom the law is to be applied to reasonably determine their rights thereunder...." *Stucki v. Plavin,* 291 A.2d 508, 510 (Me.1972); *see also Fitanides v. Crowley,* 467 A.2d 168 (Me.1983); *Phillips Petroleum Co. v. Zoning Board of Appeals of the City of Bangor,* 260 A.2d 434 (Me.1970).

In *Cope,* we held that a provision directing a planning board to determine whether a proposed use would "adversely affect the health, safety or general welfare of the public,"[3] and whether the use would "alter the essential characteristics of the surrounding property" was facially unconstitutional as an improper delegation of legislative authority to the planning board. 464 A.2d at 224, 225. In *Waterville Hotel Corp.,* we nullified a provision that vested absolute power in the Board of Zoning Appeals to approve or disapprove "all major changes of uses of land, buildings or structures...." 241 A.2d at 51. Similarly, in *Town of Windham v. LaPointe,* 308 A.2d 286 (Me.1973), and *Stucki v. Plavin,* 291 A.2d 508 (Me.1972), we invalidated ordinance provisions that vested essentially unguided authority in the respective board of zoning appeals and planning board. *Cf. Barnard v. Zoning Board of Appeals of the Town of Yarmouth,* 313 A.2d 741 (Me.

---

**3.** We reached the same result on similar language in *Fitanides v. Crowley,* 467 A.2d 168, 172

1974) (distinguishing the applicability of these principles to variance cases).

The Article 6, section 108.3(4) provisions appear to require a detailed inquiry into numerous aspects of a proposed use. Closer examination, however, reveals most of the detailed factors to be considered by the Planning Board fail to provide any guidance whatsoever to the Planning Board or to the developer. While the Planning Board is required to "evaluate" or "consider" certain factors, the ordinance is silent as to what weight or effect should be attached to them. We express no opinion whether the detailed provisions relating to shorelands provide adequate guidance because they are not in question in this case.

 In *Drexel v. City of Miami Beach,* 64 So.2d 317 (Fla.1953), permits for parking garages could only be issued after a public hearing at which "due consideration" was to be given to the "effect upon traffic." The language of the Florida Supreme Court is particularly instructive with respect to the case at bar:

> We think a city council may not deprive a person of his property by declining a permit to erect upon it a certain type of garage where the only restriction on the use of the police power is that it shall not be exercised before "due consideration" is given by someone, presumably the councilmen, to the effect of the building upon traffic. Both the quoted words, as well as their synonyms, could be construed to allow all manner of latitude in the grant of a permit in one case and the denial of a permit in a similar one, and would give every opportunity for the exercise of the power with partiality.
>
> . . . .
>
> The present ordinance could easily become such an instrument of discrimination by a majority of the councilmen giving what each might think "due consider-

---

(Me.1983).

ation" to traffic problems and thereafter denying a permit in one instance while granting a permit in a less meritorious case, though acting conscientiously in both. This would be possible because no uniform rules or regulations are defined to remove the sphere of action from the influences of whim or caprice.

*Id.* at 319. *See also Effie, Inc. v. City of Ocala,* 438 So.2d 506 (Fla.Dist.Ct.App. 1983). We find the reasoning of the Florida Supreme Court persuasive and in accord with our own precedents. We therefore hold that the Article 6, section 108.3(4) factors considered by the Pittsfield Planning Board and Board of Appeals are impermissibly broad and therefore void. Having complied with the remainder of applicable regulations in the ordinance, Chandler is entitled to a special exception permit. The issues presented by Chandler's appeal therefore are moot.

The entry is:

In CV 82–171, appeal dismissed.

In CV 84–112, judgment modified to remand for issuance of the special exception permit to plaintiff and as modified, affirmed.

All concurring.