MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:     2021 ME 63
Docket:       WCB-20-291
Argued:       September 8, 2021
Decided:      December 16, 2021

Panel:        STANFILL, C.J., and MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

ROGER DESGROSSEILLIERS

v.

AUBURN SHEET METAL et al.

GORMAN, J.

[¶1]  Auburn Sheet Metal and Maine Employers' Mutual Insurance Company (MEMIC) appeal from a decision of the Appellate Division of the Workers' Compensation Board affirming the decision of the WCB Administrative Law Judge (*Goodnough, ALJ*) granting Roger Desgrosseilliers's petition for award of compensation.  The question presented on appeal is whether an employee is required to give notice of his occupational disease claim to his former employer's insurer when the employer no longer exists.  Because neither 39-A M.R.S. § 301 (2021) nor the Occupational Disease Law, 39-A M.R.S. §§ 601-615 (2021), impose that requirement, we affirm the decision of the Appellate Division.

## I. BACKGROUND

[¶2]  The following facts were found by the ALJ in his decision, were adopted by the Appellate Division, and are not challenged on appeal.  Roger Desgrosseilliers is a seventy-eight-year-old retiree.  Beginning in the 1960s, Desgrosseilliers worked as a sheet metal worker repairing asbestos-insulated ductwork, siding, roofing, lagging, boilers, and hoods in paper mills throughout New England.  His work resulted in the release of asbestos fibers into the air, where they were inhaled by him.  On November 2, 2015, nearly twenty years after retiring, Desgrosseilliers underwent surgery for lung cancer and was later diagnosed with asbestosis.

[¶3]  In March of 2016, Desgrosseilliers filed with the Workers' Compensation Board five petitions for award of compensation under the Occupational Disease Law.  Each petition alleged a different date of injury and named a different employer and insurer pairing.  All told, the petitions covered a period stretching from September of 1977 until May of 1994.  The petitions were consolidated, and the parties agreed to bifurcate the issues of medical causation and the last injurious exposure.  After a hearing, the ALJ found that Desgrosseilliers's last injurious exposure to asbestos more likely than not occurred in 1994 when he was working for Auburn Sheet Metal.  In 1994,

Auburn Sheet Metal was owned and operated by Desgrosseilliers's wife and was insured by MEMIC. Desgrosseilliers's wife has since died, and Auburn Sheet Metal no longer exists.

[¶4] The ALJ determined that Desgrosseilliers's date of injury for purposes of applying the Occupational Disease Law was November 2, 2015, when he underwent lung cancer surgery. *See* 39-A M.R.S. §§ 606- 607. The ALJ also determined, however, that Desgrosseilliers likely gained awareness of the compensable nature of his injury only when he discussed the claim with his attorney on February 26, 2016.

[¶5] Desgrosseilliers notified Auburn Sheet Metal of his claim on Monday, March 28, 2016, when one of its insurers received his petition for award. This was thirty-one days after he understood the compensable nature of his injury. The ALJ concluded that Desgrosseilliers's notice on the thirty-first day was timely because the thirtieth day fell on a Sunday. In explaining its conclusion, the ALJ referenced M.R. Civ. P. 6(a), which allows for an extra day to file documents in civil court matters when, among other reasons, the last day of the filing period is a Sunday. The ALJ also concluded that Desgrosseilliers was operating under a mistake of fact as to the cause or nature of his injury and

4

that the notice he provided occurred within a reasonable time. *See* 39-A M.R.S. § 306(5) (2021).

[¶6]  After receiving the ALJ's decision, the parties entered into a consent decree.  They agreed that, if the ALJ's decision regarding notice was affirmed on appeal, Desgrosseilliers's petition would be granted against Auburn Sheet Metal, as insured by MEMIC.  MEMIC specifically reserved the right to challenge the issue of notice to the Appellate Division and to us.  On appeal, the Appellate Division affirmed the decision of the ALJ with regard to the issue of notice, albeit on different grounds than that of the ALJ.  The Appellate Division concluded that Desgrosseilliers was not required to provide notice to MEMIC pursuant to section 301 and, therefore, did not consider whether the notice to MEMIC was timely.  MEMIC petitioned for appellate review of the Appellate Division's decision, and we granted the petition.  *See* 39-A M.R.S. § 322(3) (2021); M.R. App. P. 23(c).

## II.  DISCUSSION

[¶7]  Before 2016, when an ALJ's decision was reviewed by the Appellate Division and subsequently appealed, we would review the ALJ's decision directly.  *Bailey v. City of Lewiston*, 2017 ME 160, ¶ 9, 168 A.3d 762.  The Legislature, however, amended the workers' compensation statute to provide

that "only a decision of the [Appellate] [D]ivision may be reviewed on appeal." 39-A M.R.S. § 322(1); *see* P.L. 2015, ch. 469, § 2 (effective July 29, 2016). Therefore, we review decisions of the Appellate Division "according to established principles of administrative law, except with regard to the . . . ALJ's factual findings." *Bailey*, 2017 ME 160, ¶ 9, 168 A.3d 762. Decisions of the Appellate Division interpreting the Workers' Compensation Act are "entitled to great deference and will be upheld on appeal unless the statute plainly compels a different result." *Johnson v. Home Depot USA, Inc.*, 2014 ME 140, ¶ 8, 106 A.3d 401 (quotation marks omitted).

[¶8]  This case, with its focus on section 301, requires us to consider the Maine Workers' Compensation Act of 1992, 39-A M.R.S. §§ 101-409 (2021), and its relationship to the Occupational Disease Law, 39-A M.R.S. §§ 601-615. *See Urrutia v. Interstate Brands Int'l*, 2018 ME 24, ¶ 12, 179 A.3d 312 ("The law of workers' compensation is uniquely statutory.") (alteration and quotation marks omitted)).  Our main objective in construing any statute is to give effect to the will of the Legislature.  *Est. of Stone v. Hanson*, 621 A.2d 852, 853 (Me. 1993); *see also Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me. 1994).  In determining the legislative intent, we look first to the plain meaning of the statutory language.  *Wuori v. Otis*, 2020 ME 27, ¶ 6, 226 A.3d

771. "[W]e construe that language to avoid absurd, illogical or inconsistent results, and we consider the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." *Urrutia*, 2018 ME 24, ¶ 12, 179 A.3d 312 (quotation marks omitted).

[¶9] The question presented here is whether any portion of the Workers' Compensation Act of 1992 or the Occupational Disease Law requires an employee to provide notice of an occupational disease to an insurer when that employer is no longer in business. As we have recognized, the purpose of the thirty-day notice requirement[1] is to enable the employer to provide prompt medical treatment to minimize the employee's injuries or disability and the employer's liability, to make a prompt investigation of the circumstances of the accident, and to take prompt action to prevent similar injuries to other workers. *See Daigle v. Daigle*, 505 A.2d 778, 779 (Me. 1986); *Dunton v. E. Fine Paper Co.*, 423 A.2d 512, 518 (Me. 1980); *Clark v. DeCoster Egg Farms*, 421 A.2d 939, 942 (Me. 1980).

---

[1] The notice requirement for some employees has recently been enlarged to sixty or ninety days after the date of injury, depending on when the injury occurred. *See* 39-A M.R.S. § 301 (2021); P.L. 2019, ch. 344, § 13 (effective Sept. 19, 2019).

[¶10]  Although this is a case governed by the Occupational Disease Law, the parties agree that the notice provision of section 301 applies to occupational disease claims.  *See* 39-A M.R.S. § 607 ("Sections 301 to 307 with reference to giving notice, making claims and filing petitions apply to cases under th[e] [Occupational Disease Law] . . . .").  Section 301 reads, in relevant part:

> For claims for which the date of injury is on or after January 1, 2013 and prior to January 1, 2020, proceedings for compensation under this Act, except as provided, may not be maintained unless a notice of the injury is given within 30 days after the date of injury. . . .
>
> The notice must be given to the employer, or to one employer if there are more employers than one; or, if the employer is a corporation, to any official of the corporation; or to any employee designated by the employer as one to whom reports of accidents to employees should be made.  It may be given to the general superintendent or to the supervisor in charge of the particular work being done by the employee at the time of the injury.  Notice may be given to any doctor, nurse or other emergency medical personnel employed by the employer for the treatment of employee injuries and on duty at the work site.  *If the employee is self-employed, notice must be given to the insurance carrier or to the insurance carrier's agent or agency with which the employer normally does business.*

(Emphasis added.)  As MEMIC concedes, the plain language of section 301 provides no direction to those employees, like Desgrosseilliers, whose employer no longer exists.  Relying on the definition of "employer" found in 39-A M.R.S. § 102(12), MEMIC asserts, however, that we should read section

8

301 as though it requires notice to the "employer or insurer."  Section 102(12)

provides:

> If the employer is insured, "employer" includes the insurer,
> self-insurer or group self-insurer unless the contrary intent is
> apparent from the context or is inconsistent with the purposes of
> this Act.

[¶11]  Adding "insurer" to the first iteration of the word "employer" in

section 301 would produce the following result:

> For claims for which the date of injury is on or after January 1, 2013
> and prior to January 1, 2020, proceedings for compensation under
> this Act, except as provided, may not be maintained unless a notice
> of the injury is given within 30 days after the date of injury. . . .
>
> The notice must be given to the employer [*or insurer*], or to
> one employer if there are more employers than one; or, if the
> employer is a corporation, to any official of the corporation; or to
> any employee designated by the employer as one to whom reports
> of accidents to employees should be made.  It may be given to the
> general superintendent or to the supervisor in charge of the
> particular work being done by the employee at the time of the
> injury.  Notice may be given to any doctor, nurse or other
> emergency medical personnel employed by the employer for the
> treatment of employee injuries and on duty at the work site.  If the
> employee is self-employed, notice must be given to the insurance
> carrier or to the insurance carrier's agent or agency with which the
> employer normally does business.

(Emphasis added.)   The problem with this reading is that it results in

uncertainty and confusion. *See Urrutia*, 2018 ME 24, ¶ 12, 179 A.3d 312. Would

every employee have the option to give notice to *either* the employer or an

insurer when both are in existence and known? That is an unlikely result, because allowing an employee to give notice to the insurer rather than the employer would ignore the carefully curated list of individuals or entities authorized to accept notice from an employee and on behalf of an employer. *See* 39-A M.R.S. § 301. Such a process could prevent anyone directly associated with the workplace from actually being notified, a result inconsistent with the purposes of section 301. *See Daigle*, 505 A.2d at 779; *Dunton*, 423 A.2d at 518; *Clark*, 421 A.2d at 942.

[¶12] Even if this interpretation were only applied in situations where the employer is no longer in existence, a further complication arises in cases involving occupational diseases. Assuming that section 102(12) should be applied generally to the Occupational Disease Law,[2] the language in the Law's notice provision section demonstrates an apparent "contrary intent" in its use

---

[2] As noted above, 39-A M.R.S. § 607 (2021) does specifically incorporate section 301 into the Occupational Disease Law, 39-A M.R.S. §§ 601-615 (2021). Although there is no provision specifically incorporating 39-A M.R.S. § 102 (2021) or its definitions, 39-A M.R.S. § 602 states:

> Except as otherwise specifically provided, incapacity to work or death of an employee arising out of and in the course of employment and resulting from an occupational disease must be treated as the happening of a personal injury arising out of and in the course of the employment, within the meaning of the former Workers' Compensation Act or the Maine Workers' Compensation Act of 1992, *and all the provisions of the applicable Act apply to that occupational disease. . . .*

(Emphasis added and footnotes omitted.)

of "employer." Title 39-A M.R.S. § 606, which establishes a process for the determination of the date an employer becomes liable for an employee incapacitated by an occupational disease, also contains specific language directing to whom notice must be given:

> The date when an employee becomes incapacitated by an occupational disease from performing the employee's work in the last occupation in which the employee was injuriously exposed to the hazards of the occupational disease is the date of the injury equivalent to the date of injury under the former Workers' Compensation Act or the Maine Workers' Compensation Act of 1992. When compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of the occupational disease and the insurance carrier, if any, on the risk when the employee was last exposed under that employer, are liable. The amount of the compensation must be based on the average wages of the employee on the date of injury. *Notice of injury and claim for compensation must be given to the employer in whose employment the employee was last injuriously exposed to the hazards of the occupational disease.* . . .

(Emphasis added and footnotes omitted.)

[¶13] When "the employer in whose employment the employee was last injuriously exposed to the hazards of the occupational disease" is no longer in existence, could the employee satisfy his notice obligation by providing notice to any one of the employer's past insurers, even if that insurer was not responsible for the period of employment when the last injurious exposure

occurred? *See* 39-A M.R.S. § 606. How is the employee supposed to know which insurer to notify? Would notice to *any* insurer suffice?

[¶14] Because MEMIC's proposed reading of the statute would require us to adopt an implied and alternate meaning to the statutory language for some cases, i.e., those where an employer is no longer in existence, and a "plain language" meaning to those cases where both the employer and the insurer are known and still in existence, we would be creating a system not currently found in either the Workers' Compensation Act of 1992 or the Occupational Disease Law. *See Daigle*, 505 A.2d at 779. Had the Legislature intended to place such a requirement only on certain employees—those whose employers are no longer in existence—it certainly knew how to draft such a requirement. *See HL 1, LLC v. Riverwalk, LLC*, 2011 ME 29, ¶ 25, 15 A.3d 725 ("It is apparent that the Legislature knew how to create statutory language that allows [the intended result in other provisions] . . . . Consequently, the absence of such language [in this provision] demonstrates the Legislature's intent [to provide for a different result]."). Section 301 already contains a provision that specifically requires some employees—those who are self-employed—to provide notice to the "insurance carrier or to the insurance carrier's agent or agency."

[¶15]   We have repeatedly recognized that the law of workers' compensation is uniquely statutory.  *See Urrutia*, 2018 ME 24, ¶ 12, 179 A.3d 312.  In the absence of a clear indication of legislative intention, and in light of the substantial deference we pay to the Appellate Division's interpretation when the statute's plain language does not compel a contrary result, we decline to graft onto the statutory scheme the requirement that an employee provide notice to the employer's insurer when the employer is no longer in existence. *Johnson*, 2014 ME 140, ¶ 8, 106 A.3d 401; *Wentzell v. Timberlands, Inc.*, 412 A.2d 1213, 1215 (Me. 1980) ("Since the Workers' Compensation Act is a creation of the [L]egislature, the [L]egislature bears the primary responsibility for enunciating with clarity the purposes it intends to achieve through that statute."); *Ryerson v. Pratt & Whitney Aircraft*, 495 A.2d 808, 812 (Me. 1985) ("If a policy different from that laid down by th[e] clear language is to be adopted, it is the [L]egislature that should do it . . . .").  To do otherwise would be to venture outside of our role in a uniquely statutory field created in response to legislative dissatisfaction with judicial solutions to the problems of compensation for workers injured or otherwise harmed in the workplace. *Am. Mut. Ins. Cos. v. Murray*, 420 A.2d 251, 252 (Me. 1980).

### III.  CONCLUSION

[¶16]  For the foregoing reasons, we conclude that the Appellate Division properly concluded that the workers' compensation statute does not impose on an injured employee whose employer is no longer in existence the duty to give notice to the insurer.

The entry is:

Judgment affirmed.

---

Elizabeth Eddy Griffin, Esq. (orally), MEMIC, Portland, for appellants Auburn Sheet Metal and Maine Employers' Mutual Insurance Company

James J. MacAdam, Esq. (orally), Nathan A. Jury, Esq., and Donald M. Murphy, Esq., MacAdam Jury, P.A., Freeport, for appellee Roger Desgrosseilliers

Workers Compensation Board Appellate Division case number 17-0045
FOR CLERK REFERENCE ONLY