MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2022 ME 15
Docket:        Yor-21-201
Submitted
  On Briefs:   January 26, 2022
Decided:       March 1, 2022

Panel:         MEAD, JABAR, HORTON, and CONNORS, JJ.


DARYA I. ZAPPIA

v.

TOWN OF OLD ORCHARD BEACH


HORTON, J.

[¶1]  Darya I. Zappia appeals from an order entered by the Superior Court (York County, *Mills, A.R.J.*) affirming the Town of Old Orchard Beach's decision to deny Zappia's application to build a greenhouse in the front yard of her residential property.  The Town's Zoning Board of Appeals interpreted a particular provision of the Town's Zoning Ordinance to prohibit Zappia from building the greenhouse anywhere in the front yard of her property.  *See* Old Orchard Beach, Me., Code § 78-1381(a) (Aug. 3, 2021).  We agree with Zappia's contention that the provision does not prevent her from building a greenhouse in her front yard, provided that the Ordinance's setback requirement is satisfied.  *Id.*  We therefore vacate and remand for the Superior Court to remand this matter to the Board for proceedings consistent with this opinion.

## I. BACKGROUND

[¶2]  The Town of Old Orchard Beach Zoning Ordinance establishes zoning districts and prescribes various height, width, setback and other requirements for principal and accessory structures in each district.  *See* Old Orchard Beach, Me., Code §§ 78-456 to 78-1229 (Aug. 3, 2021).  In one district, separate setback requirements are defined for principal structures and for accessory structures, *id.* § 78-805, but in most districts, a single setback requirement applies to "all structures," *see, e.g.*, *id.* § 78-579, a phrase not defined in the Ordinance but one that in context plainly includes both principal structures and accessory structures.

[¶3]  Zappia owns a lot on Portland Avenue in Old Orchard Beach, occupied by a house and a separate barn.  The property is located within the Rural District as defined by the Ordinance.  The Ordinance's space and bulk regulations for the Rural District require "a minimum front yard setback" of fifty feet for "all structures."  *Id.* § 78-964.  Zappia filed with the Town an application for a building permit, seeking permission to build a thirty-by-thirty-six-foot noncommercial greenhouse in the area between her barn and the public road.  The Ordinance classifies her proposed greenhouse as an "accessory structure."  *See id.* § 78-1.  With her application she filed a lot

survey and a sketch of the proposed greenhouse showing that the entire structure would be outside the fifty-foot front yard setback.

[¶4] Based on an Ordinance provision applicable to all districts stating that "[n]o garage, swimming pool or other accessory building shall be located in a required front yard," *id.* § 78-1381(a), the Town's Code Enforcement Officer (CEO) denied the application because, according to the CEO, "an accessory structure cannot be located in the front yard." Zappia appealed the denial to the Town's Zoning Board of Appeals. The Board upheld the denial based on the same Ordinance provision, concluding that it prohibits accessory structures anywhere in Zappia's front yard.[1] Zappia appealed to the Superior Court (*Mills, A.R.J.*), which affirmed the Board's decision. This appeal followed. *See* 14 M.R.S. § 1851 (2021); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

### A. Standard of Review and Operative Decision

[¶5] When the Superior Court has acted in its intermediate appellate capacity to adjudicate an appeal from a municipal zoning board decision, we review the operative decision of the municipality directly. *Hill v. Town of Wells*,

---

[1] That decision occurred after Zappia's first appeal, in which the Superior Court (*O'Neil, J.*) remanded the matter to the Board for a de novo hearing in compliance with 30-A M.R.S. § 2691(3) (2021), but those proceedings are not germane to Zappia's appeal here.

2021 ME 38, ¶ 8, 254 A.3d 1161. When a municipal ordinance provides for a board of appeals to review a CEO's decision, the board's review is presumptively de novo and the board's decision is the operative decision for purposes of our review unless the ordinance explicitly provides for appellate review. *LaMarre v. Town of China*, 2021 ME 45, ¶¶ 4-5, 259 A.3d 764. When the ordinance explicitly calls for the board's review to be appellate, the operative decision is that of the CEO. *See id. ¶ 5.*

[¶6] The Town of Old Orchard Beach Zoning Ordinance provides, in pertinent part:

> The board of appeals shall have the power and duty to hear and decide appeals where it is alleged there is an error in any order, decision or determination made by the [CEO] in writing. The board may affirm or reverse in whole or in part or may modify the [CEO's] order, decision or determination.

§ 78-92.

[¶7] We have decided that a zoning ordinance contains a sufficiently explicit provision for appellate review when the ordinance limits the board of appeals' review to determining whether the CEO's decision was erroneous as a matter of law or was not supported by substantial evidence in the record, thereby implicitly precluding the board from taking additional evidence or

adopting its own findings of fact. *See LaMarre*, 2021 ME 45, ¶ 5, 259 A.3d 764; *Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶ 11, 868 A.2d 161.

[¶8]  Here, the Ordinance grants the Board broad authority to affirm, reverse, or modify the CEO's decision without limiting the review to the evidence and the record before the CEO.  § 78-92.  We conclude that the Ordinance provides for the Board to conduct de novo review of the CEO's decisions and that therefore the operative decision for purposes of our review is that of the Board.

[¶9]  In reviewing municipal zoning board decisions, we defer to the judgment of the municipal board on questions of fact.  *See Jordan v. City of Ellsworth*, 2003 ME 82, ¶ 8, 828 A.2d 768.  However, "[t]he interpretation of a local ordinance is a question of law, and we review that determination de novo." *Gensheimer*, 2005 ME 22, ¶ 16, 868 A.2d 161; *see also Isis Dev., LLC v. Town of Wells*, 2003 ME 149, ¶ 3 n.4, 836 A.2d 1285.

B.    **The Ordinance Provisions Applicable to Zappia's Front Yard**

[¶10]  "The meaning of terms or expressions in zoning ordinances is a question of statutory construction . . . ." *LaPointe v. City of Saco*, 419 A.2d 1013, 1015 (Me. 1980).  When a term in an ordinance is "ambiguous or uncertain, the court's construction of that term should be guided by the context in which the

6

term appears" and the ordinance should be considered "as a whole." *Id.* "All words in [an ordinance] are to be given meaning, and none are to be treated as surplusage if they can be reasonably construed." *Cobb v. Bd. of Counseling Pros. Licensure*, 2006 ME 48, ¶ 11, 896 A.2d 271. "While undefined terms should be given their common and generally accepted meanings unless the context requires otherwise, terms which control and limit the use of real estate must be given a strict construction." *LaPointe*, 419 A.2d at 1015.

[¶11]  Zappia contends that the Ordinance provision on which the Board's denial relies—"No garage, swimming pool or other accessory building shall be located in a required front yard," § 78-1381(a)—means only that her proposed greenhouse cannot be located within the portion of the front yard required to meet the fifty-foot front yard setback for "all structures" in the Rural District, not that it cannot be located in her front yard at all.

[¶12]  In rejecting Zappia's interpretation, the Board adopted a six-paragraph set of "conclusions of law," including the following:

> The [Board] declines to adopt [Zappia's] interpretation that the term "front yard" means "front yard setback," for three reasons. First, the Zoning Ordinance already restricts accessory structures from being located in the 50-foot setback area, *see* Section 78-964, rendering Section 78-1381(a) unnecessary under [Zappia's] interpretation. Second, [Zappia's] interpretation would require the [Board] to read additional terms into the Zoning Ordinance, which is not permitted.  The [Board] notes that elsewhere in the Zoning

Ordinance, the term "front yard setback" *is* used; therefore, the Town Council—as the legislative body of the Town of Old Orchard Beach—could have used the term "front yard setback" in Section 78-1381(a), but elected not to.  Also, the exceptions contained within Section 78-1381(c) and (d) make reference [to] setbacks, while Section 78-1381(a) does not.[2]  Therefore, viewed in the context of the Zoning Ordinance, it appears that the legislative intent was to limit accessory structures in the entire "front yard," not just the area of the "front yard setback."  Third, the [Board] lacks the authority to second-guess the legislative determination of the Town Council or to amend the Zoning Ordinance.  If any amendment to the provision is desired, it must happen through the Town Council in accordance with Section 78-31 of the Zoning Ordinance.

Of the three reasons given, we agree with only the third.

[¶13]  In attempting to justify its interpretation of "required front yard" to mean a property's entire front yard, the Board pointed out that "the Zoning Ordinance already restricts accessory structures from being located in the 50-foot setback area" and that "elsewhere in the Zoning Ordinance, the term 'front yard setback' *is* used."  However, this interpretation is not persuasive when the Ordinance is read as a whole.  *See LaPointe*, 419 A.2d at 1015.

[¶14]  The Ordinance provision that perhaps most clearly refutes the Board's interpretation appears in section 78-805, which contains the space and bulk requirements for General Business District 1, one of the zoning districts

---

[2] Subsections (c) and (d) of section 78-1381 relate to side and rear yard setbacks for storage sheds and "membrane-covered frame structures."  They have nothing to do with front yard setbacks.

8

defined in the Ordinance. The front yard setback provision for accessory structures reads "Not permitted." § 78-805. The provision is significant for three different reasons.

[¶15] First, it shows that the drafters of the Ordinance knew how to prohibit an accessory structure from being anywhere in a property's front yard. That no similar provision appears in the space and bulk regulations for any of the other districts, most of which contain front yard setback distances that apply to "all structures," establishes that the drafters intended to prohibit accessory structures only within front yard setbacks in the other zoning districts and to prohibit them anywhere in the front yards of properties in General Business District 1. *See id.* §§ 78-489 to 78-1136.

[¶16] Second, the provision undermines the Board's contention that Zappia's interpretation would render section 78-1381(a) surplusage and unnecessary. The Board's interpretation is subject to the same criticism. If section 78-1381(a) means that an accessory building is prohibited anywhere in a property's front yard, then section 78-805, the provision prohibiting an accessory structure anywhere in a front yard within General Business District 1, becomes surplusage and unnecessary.

[¶17]   Third, that accessory structures are prohibited anywhere in the front yard of General Business District 1 properties contradicts the Board's contention that the drafters of the Ordinance "could have used the term 'front yard setback' in Section 78-1381(a)[] but elected not to."  The drafters could not in fact have used "front yard setback" in section 78-1381(a) in lieu of "required front yard" because they then would have been ignoring that there is no front yard setback for accessory structures in General Business District 1. *Id.* § 78-805.

[¶18]   The inclusion of "required" in the phrase "required front yard" serves an evident purpose—to cross-reference the Ordinance's space and bulk regulations, which define what is "required" for a property's front yard by establishing front yard setbacks.  *See, e.g.*, *id.* §§ 78-489, 78-835.  Under the Board's interpretation, the word "required" would become mere surplusage because section 78-1381(a) would prohibit an accessory structure anywhere in a property's front yard.

[¶19]   The interpretation of section 78-1381(a) that is completely consistent with all other provisions of the Ordinance, and with the Ordinance as a whole, is that the phrase "required front yard" refers to the portion of the front yard that is required to be free of accessory structures under the

applicable space and bulk regulations for the zoning district within which the property is located. *See LaPointe*, 419 A.2d at 1015. Thus, as to properties within General Business District 1, "required front yard" means the entire front yard; as to properties in the Rural District and the other zoning districts, "required front yard" means the portion of the front yard within that zoning district's defined front yard setback for accessory structures. *See* §§ 78-805, 78-964. This reading of the Ordinance comports with our canons of statutory construction and prevents any words or provisions from being treated as surplusage. *See Cobb*, 2006 ME 48, ¶ 11, 896 A.2d 271.

[¶20] Even if the meaning of the undefined term "required front yard" were deemed to be ambiguous, a basic principle of construction of zoning regulations calls for strict construction of provisions that restrict the use of property. *See LaPointe*, 419 A.2d at 1015. The Board's decision quoted *LaPointe*, but by interpreting "required front yard" in a manner that significantly restricts Zappia's and other residents' use of their properties, it did not follow *LaPointe*'s guidance.

The entry is:

> Judgment vacated. Remanded to the Superior Court for remand to the Town of Old Orchard Beach Zoning Board of Appeals for proceedings consistent with this opinion.

---

David A. Goldman, Esq., Norman, Hanson & DeTroy, LLC, Portland, for appellant Darya I. Zappia

Zachary B. Brandwein, Esq., Bernstein Shur, Portland, for appellee Town of Old Orchard Beach

York County Superior Court docket number AP-2020-10
FOR CLERK REFERENCE ONLY