STATE OF MAINE
OXFORD, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-22-06

JAMES MICHAEL DAY,

      Petitioner,

v.

TOWN OF HIRAM,

      Respondent,

v.

BRIAN SCHNELL and SARAH
SCHNELL,

      Parties-in-Interest.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**POST-REMAND DECISION AND
ORDER ON PETITIONER'S RULE 80B
APPEAL**

Pursuant to Maine Rule of Civil Procedure 80B, Petitioner James Michael

Day ("Petitioner") appeals the issuance of a conditional use permit by the Town of

Hiram (the "Town") Planning Board (the "Board") to Parties-in-Interest Brian and

Sarah Schnell (the "Schnells"). This matter returns to the court following a remand

to the Board for further findings of fact and conclusions of law. For the following

reasons, the Board's permitting decision is affirmed.

## BACKGROUND

*Facts.* In April 2022, the Schnells applied to the Board for a conditional use

permit to open a microbrewery, taproom, and beer garden within Hiram's

Residential District. R. 10-13. The site proposed for the operation is in a heavily

1

wooded area, with the closest residence approximately 1,500 feet away. Supp. R. 31. Surrounding properties are undeveloped and are designated as tree growth parcels for tax purposes. *Id.*

Although the Schnells' proposed site is situated in the Residential District, the Town of Hiram Zoning Ordinance ("the Ordinance") contemplates several conditional uses that may be allowed in this zone, including commercial uses by businesses employing less than six full-time employees and with facilities occupying a footprint of no more than 2,500 square feet. R. 439-440; Supp. R. 31. The Schnells' application satisfied this criteria, proposing a business with three to four full-time employees and located in a 2,000-square-foot wooden barn structure. R. 10-11, Supp. R. 31.

In addition to these threshold standards, the Ordinance sets forth various factors that must be considered by the Board prior to issuing a conditional use permit. R. 474-75. As relevant here, the Board "shall [] consider" "[t]he compatibility of the proposed use with adjacent land uses" and "[t]he need of a particular location for the proposed use." R. 475.

After receiving the Schnells' application, the Board scheduled the matter for a public hearing on June 7, 2022, and posted public notice letters. R. 20-21. Petitioner voiced his opposition to the location of the project at that hearing. R. 29-31. The Board held two additional hearings and conducted a site visit before voting to approve the application on July 13, 2022. R. 168-72, 272-75, 281. The Town issued the Schnells' permit on August 17, 2022, with conditions of approval

2

that included restrictions on outdoor lighting and a mandatory 8 p.m. closing time for the brewery. R. 408-12.

*Procedural History*. Petitioner appealed the Town's permitting decision pursuant to M.R. Civ. P. 80B, raising the following three issues:

(1) The Board failed to make sufficient findings of fact;

(2) The Board misinterpreted the "compatibility standard" contained in § 6.7.3.4(2)(a) of the Ordinance, and when interpreted correctly, the record does not contain substantial evidence to support a "compatibility" finding; and

(3) The Board erred as a matter of law in its interpretation of § 6.7.3.4(2)(b)'s "necessity standard," and under a proper construction, the Board's finding of need is not supported by substantial evidence.

The parties fully briefed these issues, with the Town joining the Schnells' brief, and the court thereafter conducted oral argument.

On April 23, 2023, the court issued an order remanding the matter to the Board with instructions to issue findings of fact and conclusions of law sufficient to apprise the court of the basis for its permitting decision. The Board completed that task in May 2023, adopting detailed findings of fact and conclusions of law. Supp. R. 29-41. The parties thereafter submitted supplemental briefing.[1] The court has concluded that additional oral argument is unnecessary. *See* M.R. Civ. P. 80B(l). Having the benefit of the Board's findings of fact and conclusions of law, the court now turns to the merits of Petitioner's issues.

---

[1] The Town joined the Schnells' supplemental brief except for Section IV, in which the Schnells argue that the standards enumerated in §§ 6.7.3.4(2)(a) and (b) are "impermissibly broad."

## STANDARD OF REVIEW

On appeal pursuant to Rule 80B, the court reviews the municipal decision for errors of law, abuse of discretion, or findings not supported by the evidence. *Aydelott v. City of Portland*, 2010 ME 25 ¶ 10, 990 A.2d 1024. The court may not substitute its judgment for that of the municipal entity. *Tarason v. Town of South Berwick*, 2005 ME 30, ¶ 6, 868 A.2d 230. The party seeking to vacate the decision has the burden of persuasion. *Friends of Lamoine v. Town of Lamoine*, 2020 ME 70, ¶ 20, 234 A.3d 214.

When addressing a municipal board's findings of fact, the court will afford "great deference" to the board's findings and "sustain the findings unless the evidence compels a contrary conclusion." *Tominsky v. Ogunquit*, 2023 ME 30, ¶ 22, 294 A.3d 142. A "demonstration that no competent evidence supports the local board's findings is required in order to vacate the board's decision." *Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶ 17, 868 A.2d 161 (quotation marks omitted).

As to mixed questions of law and fact, "a board's ultimate characterization [is entitled to] substantial deference." *Tominsky*, 2023 ME 30, ¶ 22, 294 A.3d 142 (quotation marks omitted). The "test for affording substantial deference is whether the issue involves a situation in which the legal determination is 'greatly informed' by the board's factual findings." *Id.* (quoting *Lane Constr. Corp. v. Town of Washington*, 2008 ME 45, ¶ 13, 942 A.2d 202).

Finally, the court "give[s] no deference to a board's interpretation of an ordinance because such interpretation is a question of law that [the court] review[s]

4

de novo." *Id.* When reviewing an ordinance, the court first considers its plain language, and if the ordinance is clear on its face, the court "need not look beyond the words themselves." *Duffy v. Town of Berwick*, 2013 ME 105, ¶ 23, 82 A.3d 148, 157 (quotation marks omitted). If the terms of the ordinance are ambiguous, they will be "construed reasonably with regard to both the objects sought to be obtained and to the general structure of the ordinance as a whole." *Day v. Town of Phippsburg*, 2015 ME 13, ¶ 12, 110 A.3d 645 (quotation marks omitted).

## DISCUSSION

### I. *"Compatibility" under § 6.7.3.4(2)(a)*

Petitioner argues that the Board erred as a matter of law in interpreting the "compatibility standard" set forth in § 6.7.3.4(2)(a) of the Ordinance, which requires the Board to consider "[t]he compatibility of the proposed use with adjacent land uses" in determining whether to grant a conditional use permit. R. 475. Petitioner primarily contends that because undeveloped woodlots surround the site of the prospective brewery, the Schnells' proposed use is necessarily at odds with the common and intended uses of these adjacent lands. Pet'r's Post-Remand Br. 5-8.

In advancing this argument, Petitioner proposes a standard by which compatibility should be measured. *See* Pet'r's Br. 16-17; Pet'r's Post-Remand Br. 6. Specifically, Petitioner contends that § 6.7.3.4(2)(a) required the Board to determine whether "the purpose to which the Schnells intended to dedicate the Property [would] exist together in harmony with the intended purposes of [the] properties" immediately adjacent to the proposed brewery. Pet'r's Reply Br. 3.

5

As an initial matter, the court adopts Petitioner's articulation of the compatibility standard. Neither the Town nor the Schnells challenge Petitioner's interpretation, and the court finds the proposed standard to be consistent with the plain language of § 6.7.3.4(2)(a), *see* R. 475 ("The "Planning Board shall [] consider . . . [t]he compatibility of the proposed use with adjacent land uses"); the Ordinance's definition of the term "use," *see* R. 431 (defining the term "use" to mean "the purpose of which land or a structure is arranged, designed, or intended, or for which land or a structure is or may be occupied"); and the commonly understood meaning of the term "compatible," *see* Merriam-Webster.com, https://www.merriam-webster.com/dictionary/compatible (last visited, January 3, 2024) (defining "compatible" to mean "capable of existing together in harmony").[2] Thus, under § 6.7.3.4(2)(a), the Board was required to consider whether the Schnells' intended commercial use would be harmonious with the intended purposes of the adjacent parcels.

Although Petitioner's suggested compatibility standard is legally sound, the court disagrees with Petitioner that the Board erred as a matter of law in concluding that the proposed brewery is compatible, i.e., harmonious, with the adjacent land uses. Petitioner essentially takes the position that the Board erred

---

[2] Although the Ordinance does not define the term "compatible," it instructs that undefined terms "shall have the customary dictionary meaning." R. 424; *see also State Tax Assessor v. MCI Communications Services, Inc.*, 2017 ME 119, ¶ 14, 164 A.3d 952; *Rockland Plaza Realty Corp. v. City of Rockland*, 2001 ME 81, ¶ 12, 772 A.2d 256.

because the adjacent properties are undeveloped and do not host any businesses, so a new business necessarily cannot be harmonious with the uses of the surrounding parcels. *See* Pet'r's Post-Remand Br. 5-8. That is too narrow a view of "compatibility." Although the use proposed by the Schnells might diverge in some respects from the existing uses of the neighboring woodlots, § 6.7.3.4(2)(a) does not require similarity or uniformity of uses. Rather, § 6.7.3.4(2)(a) speaks of "compatibility"—which, as Petitioner himself acknowledges, requires only that "the proposed land use and the use of the adjacent properties [be] 'capable of existing in harmony.'" Pet'r's Post-Remand Br. 6 (quoting Merriam-Webster.com, https://www.merriam-webster.com/dictionary/compatible). The court finds nothing in the Ordinance to suggest that a small commercial operation—such as that proposed by the Schnells—is per se incapable of existing in harmony with the uses put to neighboring forested properties in a residential zone. Indeed, as the Board correctly noted, "commercial uses are expressly permitted in the [Residential District] under Section 4.4.5.3 of the Ordinance with conditional use approval." Supp. R. 31; R. 440.

Consistent with the flexible compatibility standard, the Board properly engaged in a compatibility inquiry that looked at a totality of factors, including: the existing uses of the adjacent properties; the nature of the proposed business and how it would operate; whether the business would adversely impact the surrounding forested areas; the extent to which certain aesthetic and design features allowed the business to integrate into the surrounding rural environment;

7

and the existence of other businesses in the general area. Supp. R. 37. After considering these factors, the Board determined that the proposed use was compatible with the adjacent land uses. *Id.* The court finds competent evidence in the record to support this determination. *See, e.g.,* 10-11, 13, 281; Supp. R. 30-33; *see also Gensheimer,* 2005 ME 22, ¶ 17, 868 A.2d 161.

Petitioner takes issue with the Board's reference to businesses "in the general vicinity," as such businesses are not "adjacent" to the site of the proposed brewery. *See* Pet'r's Post-Remand Reply 5-6. The court finds no error in the Board's mention of these nearby businesses. As noted above, the presence of other businesses in the area was one factor among many the Board considered relevant to the question of compatibility. *See* Supp. R. 37. While Petitioner correctly notes that the ultimate focus of § 6.7.3.4(2)(a) is on compatibility between the proposed operation and the immediately adjacent parcels, the ordinance does not prohibit the Board from considering evidence of land uses in the larger geographic area as part of this inquiry.

Moreover, despite Petitioner's contentions to the contrary, the Board's references to aesthetic features of the proposed brewery do not persuade the court that the Board applied the wrong compatibility standard, i.e., one that incorrectly focused on "visual" compatibility instead of "use" compatibility. *See* Pet'r's Br. 16-18. The Board's consideration of the brewery's aesthetic and design elements was appropriate under § 6.7.3.4(2)(a), as a business's physical design may bear upon the extent to which adjacent uses are impacted. For instance, it stands to reason that a

8

modest, natural structure with plenty of green space would be less likely to disrupt adjacent recreational uses, such as birdwatching, than would a large, concrete warehouse surrounded by a paved parking lot.

In short, Petitioner fails to convince the court that the Board misinterpreted § 6.7.3.4(2)(a) or otherwise rendered a compatibility determination that was unsupported by substantial evidence.

## II. *"Need" under § 6.7.3.4(2)(b)*

Pursuant to § 6.7.3.4(2)(b), before issuing a conditional use permit the Board must consider "the need of a particular location for the proposed use." R. 475. Petitioner argues that the Board erred in concluding that this standard of "need" could be satisfied by a showing that the Schnells "d[id] not have property interests in any other parcels" and had "no feasible alternative location within their possession or control." Supp. R. 37.

The parties offer competing interpretations of the phrase "the need of a particular location for the proposed use." According to Petitioner, "need" is established only when there is something about the location that is "indispensable" to the land use proposed. Pet'r's Post-Remand Br. 9. The Schnells' proposed brewery, Petitioner argues, falls short of satisfying this definitional standard, as a brewery can be operated "on any parcel of land independent of any natural feature thereon." *Id.* By contrast, the Town and the Schnells contend that the requisite need is satisfied upon a showing that the applicant lacks a feasible alternative to the property in question. Schnells' Post-Remand Br. 12. Unlike Petitioner's proposed

standard—which appears to be concerned with the locational needs of the business activity proposed—the standard advanced by the Town and the Schnells assesses need from the standpoint of the applicant. *See id.*

The court's interpretive task begins with the plain language of the Ordinance. *Duffy*, 2013 ME 105, ¶ 23, 82 A.3d 148. The Ordinance does not define the term "need" or the phrase "the need of a particular location for the proposed use."[3] Absent a clear definition in the Ordinance itself, Petitioner looks to dictionaries and caselaw for definitions of the terms "need" and "necessary." Pet'r's Post-Remand Br. 20; *see also* R. 424. These definitions, however, do not bring the court any closer to discerning the intended meaning of § 6.7.3.4(2)(b). "Need" and "necessary" are relative terms that appear to exist on a continuum, with definitions that range from a want "of something . . . useful" to "absolutely needed: required." *See* Merriam-Webster.com, https://www.merriam-webster.com/dictionary/need (last visited, January 3, 2024) (defining "need" as "a lack of something requisite, desirable, or useful"); Merriam-Webster.com, https://www.merriamwebster.com/dictionary/necessary (last visited, January 3, 2024) (defining "necessary" as "absolutely needed: required"); *Inhabitants of Cushing v. Gay*, 23 Me. 9, 16 (1843)

---

[3] In § 3.2 entitled "Definitions," the Ordinance defines the word "necessity" as "a showing by an applicant that a proposed change in a use, structure or building cannot be done without." R. 424, 428. No party argues that the definition of "necessity" in § 3.2 governs the "need" inquiry of § 6.7.3.4(2)(b), perhaps because "necessity" as used in the Ordinance appears to be a term of art governing the circumstances under which an applicant may expand or enlarge a non-conforming use, and is thus inapplicable here. *See* R. 419 (Ordinance § 1.4.1.3).

10

("Necessary seems to include convenience, and something more, viz. a convenience that is indispensable").

Moreover, even if the court accepts Petitioner's preferred definition of "need" —that the location must be "indispensable"—the perspective from which indispensability is to be assessed remains unclear. That is, must the location be indispensable to the Schnells? Or must the location be indispensable to the proper functioning of the business activity proposed, i.e., a brewery? The court therefore concludes that the phrase "the need of a particular location for the proposed use" is capable of multiple interpretations and accordingly, is ambiguous. *See Day*, 2015 ME 13, ¶ 12, 110 A.3d 645.

In discerning the meaning of an uncertain or ambiguous provision, the court considers the "general structure of the ordinance as a whole" as well as the "objects sought to be obtained" by the ordinance, including the relevant zoning objectives and the purposes of allowing conditional use permits. *Day*, 2015 ME 13, ¶¶ 12, 15 110 A.3d 645. Language in an ordinance "should be interpreted to avoid absurd, illogical, or inconsistent results." *Rockland Plaza*, 2001 ME 81, ¶ 12, 772 A.2d 256. Moreover, "'terms which control and limit the use of real estate must be given a strict construction.'" *Zappia v. Town of Old Orchard Beach*, 2022 ME 15, ¶ 10, 271 A.3d 753 (quoting *LaPointe v. City of Saco*, 419 A.2d 1013, 1015 (Me. 1980)).

At issue here is a provision governing conditional uses. Unlike variances, which permit landowners to use their property in a manner *prohibited* by an ordinance, a conditional use (a.k.a. "special exception") allows landowners "to put

11

[their] property to a use which the ordinance *expressly permits.*" *Cope v. Inhabitants of Town of Brunswick,* 464 A.2d 223, 226 (Me. 1983) (emphasis added) (quoting *Stucki v. Plavin,* 291 A.2d 508, 511 (Me. 1972)); *Chandler v. Town of Pittsfield,* 496 A.2d 1058, 1060-61 (Me. 1985). Provisions permitting conditional uses "result[] from a legislative determination that such use will not ordinarily be detrimental or injurious to the neighborhood within the zone." *Cope,* 464 A.2d at 226–27. In other words, conditional uses "are considered by the legislative body to be essentially desirable uses, but uses that by their nature create special problems which require the imposition of restrictions or conditions." *Chandler,* 496 A.2d at 1061. This caselaw is consistent with the Ordinance, which describes a conditional use as "a use that would not be appropriate without restriction but which, if controlled under the provisions of this Ordinance, would promote the purposes of [the] Ordinance." R. 425.

In this case, the court concludes that the Town's and the Schnells' interpretation of "need" better aligns with the purpose and structure of the Ordinance. Petitioner's proposed interpretation, which requires the applicant to show that there is something about the property that is indispensable to the land use proposed, would likely result in the denial of conditional use permits for all but a small number of applicants. Unlike some commercial activities, such as mining and agricultural operations, small businesses often do not depend on the land to operate and do not have specific geographical or geological needs. Many hospitality, retail, and service-based businesses fall in this latter category and accordingly,

12

would not be able to obtain conditional use authorization under Petitioner's proposed interpretation. This outcome is inconsistent with conditional use objectives as well as the Ordinance itself, which treats small business uses as "desirable" provided certain conditions are met. *Chandler*, 496 A.2d at 1061; *Cope*, 464 A.2d at 226–27; R. 440; *see also Rockland Plaza*, 2001 ME 81, ¶ 12, 772 A.2d 256 (language "should be interpreted to avoid absurd, illogical, or inconsistent results").

Petitioner's interpretation is also at odds with the context and structure of the Ordinance as a whole. *Zappia*, 2022 ME 15, ¶ 10, 271 A.3d 753. The Ordinance sets forth two separate types of commercial uses that are permitted as conditional uses within the Residential District: (1) commercial uses by certain small businesses and (2) commercial uses by businesses that "by nature of their operation require a farm/forest location." R. 440. Thus, while the Ordinance contemplates that some businesses must have unique locational needs to operate within the Residential District, it imposes no such requirement on small business, which may be considered for conditional use authorization notwithstanding whether the business's operation requires a specific location. *See id.* If a small business's geographic needs were intended to play a pivotal role in the conditional use permitting process, the drafters would have said so using language of a clarity found elsewhere in the Ordinance. *See Desgrosseilliers v. Auburn Sheet Metal*, 2021 ME 63, ¶ 14, 264 A.3d 1237 (where "[i]t is apparent that the Legislature knew how to create statutory language that allows the intended result in other provisions,"

13

"the absence of such language in [the challenged] provision demonstrates the Legislature's intent to provide for a different result." (alterations and quotation marks omitted)).

The court therefore rejects Petitioner's construction of § 6.7.3.4(2)(b) in favor of an interpretation that focuses on whether an applicant has feasible alternatives to the location at issue. This standard is not only compatible with the language and structure of the Ordinance, but also strikes a reasonable balance between encouraging desirable uses and preserving the residential character of the zone.

The record reveals that the Board applied a definition consistent with the standard the court now adopts. After considering evidence that the Schnells "d[id] not have property interests in any other parcels," the Board reasoned that the Schnells had "no feasible alternative location within their possession or control." Supp. R. 37. Contrary to Petitioner's suggestion, the Schnells' legal interest in the property was not the "sole reason" the Board concluded that the requisite need existed. Pet'r's Post-Remand Reply 6. Nor is it accurate to say that the Board's reliance on property interests rendered the separate requirement that an applicant demonstrate right, title, or interest in the parcel "redundant and impotent." Pet'r's Post-Remand Br. 9. While in some cases, such as here, there may be overlap between the inquiry into right, title, and interest, and consideration of an applicant's lack of feasible alternatives, the Board was appropriately focused on the latter during its "need" determination under § 6.7.3.4(2)(b). On this record, Petitioner fails to persuade the court that the Board applied an incorrect standard

14

or that no competent evidence supports the Board's determination of "need." *See Gensheimer*, 2005 ME 22, ¶ 17, 868 A.2d 161 (quotation marks omitted).

Thus, for all these reasons, the court finds no reason to disturb the Board's permitting decision.[4]

## CONCLUSION

Based on the foregoing, the court affirms the Board's decision granting the Schnells' conditional use permit.

The clerk is directed to incorporate this order on the docket by reference pursuant to M.R. Civ. P. 79(a).

DATED:     1/15/24

_____
Julia M. Lipez
Justice, Superior Court

---

[4] The Schnells contend that the court may affirm on the alternative basis that § 6.7.3.4(2)(a) and (b) are "impermissibly broad" under the Law Court's decision in *Chandler v. Town of Pittsfield*, 496 A.2d 1058 (Me. 1985). Because the Schnells belatedly raise this claim—advancing it for the first time in their post-remand supplemental brief—the issue is not properly preserved for appeal. *See, e.g., Wells v. Portland Yacht Club*, 2001 ME 20, ¶ 5, 771 A.2d 371.

15



**ATTORNEYS AT LAW**

**Leah B. Rachin**
Admitted in ME

207.253.0578
lrachin@dwmlaw.com

84 Marginal Way, Suite 600
Portland, Maine 04101-2480
207.772.1941  Main
207.772.3627  Fax

September 27, 2022

Michelle Racine, Clerk
Oxford County Superior Court
P.O. Box 179
South Paris, ME 04281

   RE: *James Michael Day v. Town of Hiram, et al.*
     *Docket No. AP-2022-06*

Dear Ms. Racine:

Enclosed, please find Notices of Appearance for Attorneys Leah B. Rachin and Grady R. Burns regarding the above-captioned matter.

If you need any additional documentation please contact me directly.

Sincerely,

Leah B. Rachin

LBR/ck

Enclosures

cc: Sean R. Turley (sturley@mpmlaw.com)
  Elizabeth A. Boepple (eboepple@mpmlaw.com)

SOPSC/DC/OXFCD
SEP 29 '22 AM 11:55